————o————

WILLIAM M. LANDRUM, Appellant, vs. THE UNION BANK OF MISSOURI, AND WILLIAM T. BROWNING, et als., Respondents.

1. *Deed of trust—Sale—Presence of trustee.*—A sale of land under a deed of trust made in the absence of the trustee, by his agent, is void.
2. *Deed of trust to bank—Purchase by—Redemption.*—Where a deed of trust is given to a bank to secure a loan, the president being named as the trustee, and the bank purchases at the sale under the deed, the sale is not void, but will authorize a redemption by pursuing the proper steps.
3. *Equity—Sale of land—Fraud, collusion, etc., and inadequacy at, will not vitiate, when.*—In the absence of any proof showing unfairness or fraud or collusion between the parties to the sale, or that at the time a higher price could have been obtained, the mere fact that the property was sold at an under value will not invalidate the sale.
4. *Equity—Laches—Estoppel.*—Equity will not aid one who has negligently slept upon his rights, and induced others to act upon the belief that he has abandoned them.

5. *Equity—Laches—Sale and improvement of property—Failure to assert claim—Estoppel—Limitations.*—As to what period of time will be necessary in order to bar a claim on the ground of laches, no fixed rule can be laid down. That must be determined by the particular circumstances of each case, as the character of the property and the knowledge and actions of the parties. In some cases a comparatively brief period will be sufficient; in others, nothing short of the time of the statute of limitations.

Where property was sold under a deed of trust and the purchaser proceeded to take possession and make valuable and lasting improvements—of which facts the claimant had notice either personally or by his agent—and the purchaser remained in possession for eight years, the silence of the owner and his failure to assert his rights during that interval were held sufficient to bar his claim to equitable relief on the ground of fraud, etc.

*Appeal from Livingston Circuit Court.*

*A. S. Harris*, for Appellant.

I. The deed from Krum as trustee is void. The sale was made in Chillicothe, and Krum, at the time of the sale, was in St. Louis. (Graham vs. King, 50 Mo. 24 ; Bales vs. Perry, 51 Id. 452.)

II. Under the agreement of Hutchinson & Irelan, the purchase by the bank, at the sale under the Krum-Stagg deed of trust, would have been voidable even if Krum had been present at the sale.

III. Notwithstanding the agreement with Irelan, the bank suffered the property to be sold in August, 1861, four months afterwards, for between $2,200 and $2,400 although at the time worth $20,000 to $30,000, Lane testifying that the amount of his bid was the exact amount of the Krum-Stagg debt, "in dollars or dollars and cents," because he knew that Kelly, agent for Krum, wanted nothing more than the Krum-Stagg debt. And the bank being the beneficiary and substantially the trustee in the junior mortgage here, Lane's action was directly in violation of the rule as stated in Van Epps v. Van Epps, 9 Paige, 241.

IV. The purchase by the bank at the sale made by Sheriff Gudgell, was voidable and did not cut off the right of redemption of Irelan.

1. The whole value of the property sold by the sheriff was $20,000 to $30,000, and for this property the bank paid only

4—VOL. LXIII.

$380. This was strong evidence of fraud. (Ames vs. Gilmore, 59 Mo. 549; Mitchell vs. Jones, 50 Mo., 438.)

2. The bank, through Hutchinson, its president, was trustee in that deed of trust—it was the sole beneficiary and was the purchaser at the sale under it. That makes a clear case for redemption, as against the bank, and it makes no difference that the sale was made by the sheriff, as substitute for or co-trustee of the trustee named in the deed. (Gaines vs. Allen, 58 Mo., 544.) Hutchinson, the trustee named in the deed, was not dead, but absent from the State. As to the right of redemption, see Thornton vs. Irwin, 43 Mo., 160 ; Reddick vs. Gressman, 49 Mo., 392 McNees vs. Swaney, 50 Id., 390.

V. The time which will bar a suit to redeem is the same which will bar an action of ejectment. (McNair vs. Lott, 25 Mo., 190.)

There are no circumstances here to induce a court of equity to refuse relief on a shorter lapse of time.

There has been no increase in the value of the property since the defendants, or the party through whom they claim, became the purchaser. The record shows that the value has depreciated.

For about three years a part of said premises was occupied by the military forces, and surely the defendants will not seriously impute it against Irelan as laches, that during this period he did not come from California to dislodge the bank. On this head see Hunter vs. Hunter, 50 Mo. 452 ; Howell vs. McCreery, 7 Dana, 389; see also 2 Sto. Eq., § 1520.

*H. M. Pollard*, for Respondents.

I. The petition shows that plaintiff has no equity. It shows that he bought with full notice of defendant's title and possession. (1 Sto. Eq., 291–295; 2 Id. 312; Arden vs. Patterson, 5 John. Ch. 44 and cases cited ; 5 Doug. 698 ; Gray vs. Shaw, 14 Mo. 341.) It will not authorize a decree of redemption, inasmuch as it fails to tender the amount of the incumbrance on the property, or to show that defendant has a surplus in his hands. (Perry on Trust, vol. 2, p. 183; Hill. Mort., 137, § 14.)

II. The petition on its face shows that plaintiff is barred by lapse of time. No allegation is made that anything was done by the bank or its grantees, or by Stagg, to prevent Irelan's learning all the alleged frauds immediately on their transpiring; and the petition shows that with full knowledge of those frauds, and nothing to hinder, he waited for almost ten years, and then after lasting and valuable improvements and repairs are made, brings his suit. (Wagn. Stat., vol. 2, p. 918, § 10; McQuiddy vs. Ware, 20 Wal. 14; Ang. Lim., §§ 166–178; Perry Trusts, §§ 864–869–870; Smith vs. Callaway, 7 Blackf., 86; Badger vs. Badger, 2 Wal., 87; Moreman vs. Talbott, 55 Mo., 392; Whitmore vs. Marsh, 21 Wal., 178; Taylor vs. Blair, 14 Mo., 437; Burk vs. Smith, 16 Wal., 401; Broderick's Will, 21 Wal., 503; New Albany vs. Burk, 11 Wal., 107; Perry on Trusts, § 602 W.; Crispin vs. Hannavan, 50 Mo. 548.)

III. The proof shows conclusively that at the Krum sale as well as the sheriff's the property was incumbered for all it was worth at the time, and plaintiff cannot now redeem when the land has increased greatly in value by building and time, unless he shows substantial equity. (Bent vs. Peters, 59 Mo. 479.)

IV. The mere fact, all else being right, a full consideration being paid, that the trustee delegated his power to one who the proof shows acted exactly as the trustee himself would have done, will not permit the plaintiff to redeem. He cannot do so unless some act was done injuring him, or unless there was a fraud; neither was shown. (Turner vs. Timberlake, 53 Mo., 371; Perry on Trusts, § 602; Hamilton vs. Lubukee, 51 Ills., 415; Beattie vs. Butler, 21 Mo., 313.)

V. Although the consideration is inadequate, that alone, unless so gross as to indicate fraud on the part of the purchaser, will not set aside a sale. (Phillips v. Stewart, 59 Mo., 491.)

VI. Irelan told the bank he expected and intended to return in eighteen months; and the bank did wait over two years before it sold—and Irelan has not yet returned—and the preponderance of the evidence shows there was no agreement to wait a day for him. (McNew vs. Booth, 42 Mo., 189.)

*W. P. Hall*, for Respondent, cited: 17 Wal., 78; 15 Id., 151; 21 Id., 178; 3d. Cent. Law Jour., 98; 50 Mo., 278; 2 Ohio, 511; 55 Mo., 397; 4 Paige, 97; 32 N. T., 105; 6 Ind., 289; 5 N. T., 394; 1 Sto. Eq. Jur., § 384; 17 Ills., 522; 12 How., 156; Gwinn vs. Biddle, 8 Wheat., 78; 34 Barb. 58; 43 Mo. 561; 2 Wal., 95.)

WAGNER, Judge, delivered the opinion of the court.

From the record it appears substantially that on the 28th of June, 1860, Lambert Irelan, being the owner of lot seven (7) in block thirty-three (33) in Chillicothe, on which was situated the hotel building known as the Craig House, or Harry's Hotel, conveyed the same to John M. Krum, of St. Louis, in trust to secure the payment to Henry Stagg of the sums of money specified in seven promissory notes of that date, one of which was for the sum of two thousand dollars, payable three years after its date, and six of them were for one hundred dollars each, interest on the principal note, and payable respectively six, twelve, eighteen months and so on, after their date; and it was stipulated in the deed of trust that if either of the notes should not be paid at its maturity, all of them might be considered due, and the trustee might proceed to sell, etc.

On the 8th day of May, 1861, Irelan, his wife joining with him, made another deed of trust of the same hotel property to Jno. C. Hutchinson, president of the Branch of the Union Bank of Missouri, at Milan, for the purpose of securing the payment of a note of Irelan, for six thousand dollars, dated March 29, 1861, and payable four months after its date to said bank.

In August, 1861, at Chillicothe, a sale of the hotel property under the deed of trust to Krum, for the benefit of Stagg, was made. Judge Krum, the trustee, was not present at this sale, but was in St. Louis and acted through a Mr. Kelly.

At this sale, William A. Lane, cashier of the said branch of the Union Bank, became the purchaser in the name of his bank. In his deposition, taken by the respondents, he says he bid the amount of the Krum debt and interest, which he had figured up

and found to be between $2,200 and $2,400. He said he did not recollect any arrangement with Kelly, or any one else, as to the amount he was to bid, but he says: "I had determined to bid the amount of the debt, and that was all Kelly wanted as agent for Krum, the trustee."

A few days after this sale, Krum, as trustee, in pursuance of Lane's purchase, executed and acknowledged, at St. Louis, a deed conveying to the Union Bank the property alleged to have been sold by him as aforesaid.

In August, 1863, Gudgell, as Sheriff of Livingston County, (Hutchinson, the trustee named in the deed, being absent from the State) assuming to act under the powers contained in the deed of trust made by Irelan and wife to Hutchinson as trustee for the bank, and which authorized the sheriff to act in case of the absence, etc., of the trustee, sold all the property embraced in the deed, and the Union Bank, through the same Mr. Lane, cashier of its Branch at Milan, became the purchaser of the whole of it, at the sum of three hundred and eighty dollars and took from Sheriff Gudgell as trustee a deed conveying the property to it.

In May, 1865, the bank, by deed of quit-claim, for the consideration of ten thousand dollars, conveyed the hotel property to the respondents and one Downing, who afterwards conveyed his interest to his co-tenants, some of whom have held possession ever since the purchase from the bank, the bank having taken possession in August, 1862.

In May, 1861, Irelan left for California, taking with him a lot of horses for sale, and arrived there September, 1861, having, before he left Missouri, as the petition alleges, made a contract with the bank, through Hutchinson, its president, and trustee in the last named trust deed, by which the bank, in consideration that he would give the security of the trust deed, agreed to release the indorsers on his note to the bank, and also to protect his property from sale under the Krum-Stagg deed of trust until such time as he could take his horses to California, dispose of them, and return to Missouri.

In May, 1871, Irelan and wife conveyed the hotel property to plaintiff by warranty deed.

The petition in the case was filed June, 1871. It charges that the said several purchases by the bank were fraudulent, and that the other defendants and said Downing had notice of the facts and circumstances affecting the title to said property before their purchase. It asks that the deeds made by Krum and Cudgell be set aside and canceled, for an account of the rents and profits, that plaintiff be allowed to redeem and for general relief. The bank failed to answer and an interlocutory judgment was rendered against it.

The other defendants answered denying all material allegations in the petition, affirmed the regularity of the sales and stated that in 1865 the bank sold to Browning and the other defendants for $10,000, the full value of the property, and that they were ignorant of any defects or irregularities in the bank's title ; that they have spent in repairs, taxes and insurance all they have received for rents. They further allege that at the time Irelan left the State for California there was an unsatisfied judgment enforcing a mechanic's lien on the house for $300, and that soon after the bank purchased, it was compelled to and did pay off the judgment ; that Irelan was informed of the sale by Krum and the sheriff at once, and that upon the sale by the sheriff, when the bank bought, Irelan, by his agent, put the bank in possession, and that the bank and its grantees have been in continuous and adverse possession ever since, nearly ten years before this suit was brought ; that all this time Irelan knew of all these sales and never moved to redeem or set them aside, and his negligence and laches were relied upon to defeat the suit.

There was a replication to this answer filed, and the court proceeded to hear the plaintiff's testimony and without admitting any evidence for the defendants, dismissed the plaintiff's petition and gave judgment against him.

It is objected that the point made as regards the alleged agreement of the bank to give Irelan time and save him harmless from the Stagg debt till he could return from California, which would be in about eighteen months, cannot now be relied upon, as it was en-

tirely in parol, and would have the effect of changing the written instruments between the parties.

The question is immaterial, as, upon an examination of the evidence, we are not satisfied that any such agreement was ever made.

The testimony wholly fails to show any fraud, collusion or combination between Stagg and the bank to procure the sale under the Krum deed of trust. The bank could not prevent Krum from selling, it could only get control of the property for the benefit of Irelan, and it did get that control and kept it till 1865, when it sold to the present defendants. If Irelan relied upon that agreement he should have acted in the matter and attempted to enforce his rights within a reasonable time. Krum, the trustee, was not present at the sale, and it was, therefore, void; but the bank had invested its money on the strength of the sale; Irelan was apprised and cognizant of the fact and he could not silently lie by and permit the other party to spend its money on the property unless he availed himself of all proper promptness in asserting his rights. The court in its refusal to hear evidence on the part of the defendants precluded them from showing the amount they had paid for repairs, insurance, taxes, etc.; but it appears from the evidence introduced by the plaintiff himself that, at the time the sale was made, the foundation to the house was out of repair and required the expenditure of considerable money to render it substantial and safe. This consideration kept the witness from purchasing. The bank after its purchase remedied this defect, all of which was known to Irelan as he says that he left an agent at the place to attend to his business.

It is contended that the sale made by the bank, in which it became the purchaser under the deed of trust to Hutchinson, its president, was such a sale as would authorize the plaintiff to redeem; that as the power of sale was to the bank itself to secure its own indebtedness, it could not purchase so as to cut off the equity of redemption; and that although the sale was actually made by Gudgell, he was a co-trustee, and the sale stood just the same as if made by Hutchinson himself. If, for the sake of argument, we concede this to be true, the sale was not thereby made void. It

would authorize a redemption by pursuing the proper cause at the proper time.

It is true the bank bought the property at an under value, but it does not appear that any higher price could be obtained for it at the time. There is no pretense that any unfairness was practiced in selling to secure the bank's claim. The Stagg debt was satisfied. There was still a prior incumbrance that had to be paid off, both of which, taken with the bank debt, amounted to nearly nine thousand dollars. In addition to this, the house was in danger of falling from an unsafe foundation and a very considerable amount of money was, necessarily, to be expended in remedying the defect and preserving the building. It does not appear that the bank has ever entered satisfaction for the residue of its indebtedness which remained over and above its bid; but this can make no difference as the consideration was not so inadequate as to impugn the integrity of the sale. The bank and its grantees, ever since they have been in possession of the property, have cared for, claimed and treated it as their own. They have done nothing to lull the plaintiff into security or to prevent him from exercising the requisite diligence which was incumbent on him under the circumstances. A considerable proportion of the time of the bank's possession was when civil war was raging, when property of the description here in controversy had to be guarded with great care, and at all times, it required labor and expense to keep it in good condition. Yet with a knowledge of all these facts, Irelan paid no attention to the property, paid no taxes or insurance upon it, and does not seem to have made any claim to it.

Viewed in any manner there has been an utter lack of personal diligence in this case. The activity of equity powers cannot be invoked where a party has negligently slept upon his rights and induced others to act upon the confident belief that he has abandoned them. Laches is an equitable defense, and there is no artificial, fixed or determinate rule on this subject; but each case as it arises must be decided according to its own particular circumstances. Courts of equity never give encouragement to the enforcement of stale or antiquated demands. In certain cases a comparatively

brief period will be sufficient to bar a claim on the ground of laches, whilst in others, courts will not stop short of the time of the statute of limitations.    It all depends on the character of the property, the knowledge and actions of the parties. In the present case the hotel property needed constant attention and care to prevent deterioration. The plaintiff by himself or agent was advised of all the facts, and knew everything that was going on.    Why this delay ?    It is unaccountable.    At all events we have no hesitation in arriving at the conclusion that there has been such a want of personal diligence, as will prevent equitable relief being granted.    ·

It follows that the judgment below must be affirmed.    All the judges concur; except Judge Vories, who is absent.