BLISS et al., *Appellants* v. PRICHARD.

1.  **Attorney and Client**: TRUSTS: LACHES.  If an attorney at law intrusted with the collection of a debt, is instructed by his client to buy, in his name, land of the debtor offered for sale under execution to satisfy the debt, but instead buys in his own name, without his client's knowledge, the latter will be entitled, upon returning the money received from the sale, to have it set aside and the title vested in himself.  But if he becomes aware of the fact that the attorney has bought in his own name, he must assert his right promptly.  If he permits eight years to elapse before bringing suit, in a case where, in the meantime the attorney has "died, some of the land has been sold to strangers, and all has increased in value from seven to ten fold, he will be held guilty of such laches as will bar his claim.

2.  **Laches**: PRACTICE: PLEADING.  If it appears by a petition in equity that the plaintiff has been guilty of laches in asserting his claim, the petition will be held bad on demurrer.  If additional facts are pleaded with a view of excusing the delay, they must be definitely stated.  Thus, it is not sufficient to say that the plaintiff was not aware of the facts upon which he bases his claim to equitable relief until a long time after they occurred.  It must appear how long a time elapsed before he became aware of them.  (HOUGH, J., dissenting.)

*Appeal from Mercer Circuit Court.*—HON. G. D. BURGESS, Judge.

*C. M. Wright and Hyde & Orton*, for appellants.

1.  Whether the evidence is regarded as establishing the fact that Prichard purchased the lands in his own name, while instructed to purchase for plaintiff, or as establishing the relation of attorney and client only, between him and the plaintiffs, in either case, the finding should have been for the plaintiffs.  Story on Agency, Secs. 189, 207, 211; *Thornton v. Irwin*, 43 Mo. 153; *Grumley v. Webb*, 44 Mo. 444; *Zeigler v. Hughs*, 55 Ill. 302; Story's Eq. Jur. § 311; *Howell v. Ransom*, 11 Paige 538; *Aberdeen R. R. Co. v. Blackie Bros.*, 1 McQueen (House of Lords) 461; *Gardner v. Ogden*, 22 N. Y. 328; *Barnard v. Hunter*, 39 Eng.

Law & Eq. 569; *Casey v. Casey*, 14 Ill. 114; *Jenning v. Mc-Connel*, 17 Ill. 150; *Cowing v. Greene*, 45 Barb. 585.

2. To make silence a ratification, the *onus* is on the defendants to show that not only did the plaintiffs know the facts, but that they had legal advice to explain their rights. Story Eq. Jur., §§ 310, 311; *Casey v. Casey*, 14 Ill. 112; *Jenning v. McConnel*, 17 Ill. 148; *York Building Co. v. McKenzie*, 8 Brown's Cas. in Parl. 42; *Lewin v. Dille*, 17 Mo. 64.

3. The statute of limitation, and equity by analogy to the statute, gave plaintiffs ten years to pursue their remedy after the discovery that Prichard had bought the lands in his own name. *Perry v. Craig*, 3 Mo. 516; *Richardson v. Robinson*, 9 Mo. 810; *Thompson v. Lyon*, 20 Mo. 156; *Davis v. Fox*, 59 Mo. 127; *Michaud v. Girod*, 4 How. 503, 561; *Kelly v. Hurt*, 61 Mo. 466.

*A. S. Harris* for respondent.

1. The original petition in this case was filed nearly nine years after the purchase by Prichard. As an excuse for this gross laches, it alleges that plaintiffs did not know of his purchase for a long time after it was made. This allegation is too vague and uncertain to be the basis of any action in a court of justice. The petition does not state facts sufficient to constitute a case of action. *Johnson v. Johnson*, 5 Ala. (N. S.) 90, 100; *Bertine v. Varian*, 1 Edw. Chy. 343; *Harwood v. R. R. Co.*, 17 Wall. 78; *McQuiddy v. Ware*, 20 Wall. 19; *Marsh v. Whitmore*, 21 Wall. 185; *Buford v. Brown*, 6 B. Monroe 555; *Williams v. First Pres. Ch.*, 1 Ohio 478; Kerr on Fraud, &c., 365, 367; *Hill v. Miller*, 36 Mo. 194; Hill on Trustees, (3 Am. Ed.) side pp. 525, 168, top pp. 789, 255, in note.

2. The acceptance by the plaintiffs of the proceeds of the sale, with full and distinct notice that their agent and attorney had violated their instructions, was a ratifi-

cation of his act.    *Cordova v. Hood*, 17 Wall. 8; Story's
Eq., § 400.

3.  The plaintiffs have lost all right to relief, if they
ever had any by their long acquiescence and gross laches
in prosecuting their claim.  *Bergen v. Bennett*, 1 Caines
Cas. 19; *Sheldon v. Rockwell*, 9 Wis. 164; *McKnight v. Tay-
lor*, 1 How. 168; Kerr on Fraud & Mistake, pp. 303–4–5–6;
*Marsh v. Whitmore*, 21 Wall. 185; *Landrum v. Union Bank*,
63 Mo. 56; *Moreman v. Talbott*, 55 Mo. 397; *Mooers v.
White*, 6 John. Ch. 360; *Prevost v. Gratz*, 6 Wheat. 498;
Story's Eq. § 1520; *Johnson v. Toulmin*, 18 Ala. 50; *Davis
v. Fox*, 59 Mo. 127; *Tatum v. Holliday*, 59 Mo. 426; Brod-
erick's Will, 21 Wall. 519.

HENRY, J.—The substance of the allegations in the peti-
tion is, that in 1860 Phelps, Bliss & Co., a mercantile firm
of the city of New York, placed in the hands of George T.
Prichard, an attorney at law, in Mercer county, Missouri,
for collection a claim against Cleveland & Winn, a mer-
cantile firm doing business at Princeton, in said county;
that in April, 1860, the attorney instituted a suit by at-
tachment on the claim against the members of said firm,
and the suit of attachment was levied on the lands in con-
troversy; (a particular description of the lands is not here
necessary;) that in July, 1863, there was a final judgment
for plaintiffs for $1,020.52, against Cleveland alone, the suit
having been dismissed as to Winn; that execution was
issued July 18th, 1863, and the lands attached were sold
September 14th, 1863, and purchased by said George T.
Prichard, to whom the sheriff afterwards executed a deed
for the same; that prior to the sale, plaintiffs instructed
said Prichard to buy said lands in the name of George
Bliss for the benefit of the firm; that neither of said part-
ners at the time resided in Mercer county, or was present
at the said sale, or, for a long time thereafter, had any
knowledge that Prichard had purchased said land, or any
part thereof; that the land did not sell for enough to pay

their debt, costs and attorney's fee, but that they realized only $797.76; that the lands sold were then worth $3,000; that Prichard died in 1864. Plaintiffs offer to return the money received by them from Prichard, and ask that the sale and conveyance of the lands to Prichard be set aside, and the title vested in them, and for an account, &c. The adult defendants, Mary Jane Prichard, the widow of Geo. Prichard, Mary his daughter, and Joel H. Shelley, husband of Ellen Prichard, deceased, demurred to the petition, and the minor defenaants, by their guardian *ad litem* answered putting in issue the allegations of the petition. The court overruled the demurrer, and the adult defendants declining to file an answer, there was a trial of the cause, on the issues made by the pleadings between plaintiffs and the minor defendants, at the March term, 1875, of the circuit court of Mercer county, which resulted in a finding for defendants, and a judgment dismissing plaintiffs' bill, from which they have duly prosecuted their apppeal to this court.

The evidence clearly established the following facts: that the demand of Phelps, Bliss & Co., against Cleveland

1. ATTORNEY AND CLIENT: trusts: laches. & Winn was received by Prichard, as an attorney, for collection in 1860; that in the spring of 1860, he instituted a suit in attachment against Cleveland & Winn on that demand; that in 1863, he obtained a judgment for $1,020 against Cleveland, having previously dismissed as to Winn; that the lands in question were sold by the sheriff under an execution issued on said judgment, and that Prichard purchased them in his own name, and procured the sheriff's deed for the same; that pending the suit he had been instructed by plaintiffs to purchase said lands in the name of Geo. Bliss for the benefit of the firm, and if this were all of the case. there could be no doubt of plaintiffs' right to the relief they ask; and, to this extent, the authorities cited by their counsel are apposite and conclusive

Geo. T. Prichard died in October, 1864. This suit

was commenced August 15th, 1872. The evidence shows that in the summer or fall of 1864 plaintiffs were informed by letter, that Prichard had bought the lands. The letter was written by Calvin Butler, in response to one received by him, he says, from Phelps, Bliss & Co., or a law firm in New York representing them. The letter, which he received, he says was a complaining letter, showing that they were dissatisfied. Butler was a lawyer at Princeton, whom Prichard retained to attend to the case against Cleveland & Winn during Prichard's absence in the army in 1862, and who, before and after that judgment was rendered, corresponded with plaintiffs in regard to the business. In 1864, as we have seen, Prichard died, and the lands descended to his wife and children—and a portion of them have been disposed of. The evidence establishes that in 1863, when these lands were sold, there was no demand for real estate ; that it was depressed and scarcely had a cash value in Mercer county. One witness testified that he attended the sale with a view of purchasing thirteen acres of the land, but he thought it sold too high and declined to purchase; that the land in 1872 was worth six or seven times as much as its value in 1863. Another witness, an extensive land owner and dealer in real estate, whose land a portion of this adjoined, testified that it sold at the execution sale for more than it was then worth; that in 1872, when this suit was instituted, it was worth ten times its value in 1863. Since the sale in in 1863, a railroad has been completed through Mercer county, which the testimony shows has greatly enhanced the value of these particular lands ; that road was completed in 1871. This was substantially the evidence introduced on the trial, and the question is, did it entitle plaintiffs to the relief they asked? Were they not guilty of such laches as to forfeit any right to the relief, which, if they had been diligent, they would have been entitled to ?

In *Smith v. Clay*, Ambler 645, Lord Camden said : " A court of equity, which is never active in relief against

conscience, or public convenience, has always refused its aid to stale demands, when the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing. Laches and neglect are always discountenanced, and, therefore, from the beginning of this jurisdiction there was always a limitation to suits in this court."

In *Badger v. Badger*, 2 Wallace 94, the court held that, "there is a defense peculiar to courts of equity founded on lapse of time, and the staleness of the claim, when no statute of limitations governs the case."

In *Harwood v. Railroad Company*, 17 Wallace 81, the court observed that, "without reference to any statute of limitations, the courts have adopted the principle that the delay which will defeat a recovery must depend upon the particular circumstances of each case."

In *McQuiddy v. Ware*, 20 Wallace 19, the court remarked that, "equity always refuses to interfere where there has been gross laches in the prosecution of rights. There is no artificial rule on such a subject, but each case, as it arises, must be determined by its own particular circumstances."

In *Bergen v. Bennett*, Caines Cases 19, Chancellor Kent said: "What shall be termed a reasonable time, is not susceptible of a definite rule, but must, in a degree, depend upon the circumstances of the particular case, and be guided by sound discretion in the courts."

"Unreasonable delay and mere lapse of time, independently of any statute of limitations, constitute a defense in a court of equity. The doctrine is very ancient and established by a number of authorities." *Sheldon v. Rockwell*, 9 Wis. 166, 181.

"Acquiescence or delay for a length of time after a man is in a situation to enforce a right, and with full knowledge of the facts is, in equity a cogent evidence of a

waiver and abandonment of the right." Kerr on Fraud and Mistake 303.

"Lapse of time, when it does not operate as a positive or statutory bar operates in equity as an evidence of assent, acquiescence or waiver. The two propositions, of bar by length of time, and bar by acquiescence, are not distinct propositions. They constitute but one proposition." Ib. 305.

"A delay, which might have been of no consequence in an ordinary case, may be amply sufficient to bar the title of relief, when the property is of a speculative character, or is subject to contingencies, or where the rights and liabilities of others have been in the meantime varied. If the property is of a speculative or precarious nature, it is the duty of a man complaining of fraud to put forward his complaint at the earliest possible time. He cannot be allowed to remain passive, prepared to affirm the transaction, if the concern should prosper, or to repudiate it if that should prove to his advantage." See, also, *Castner v. Walrod,* 5 Cent. Law Journal 420, decided by the Supreme Court of Illinois, recently.

That the foregoing quotations from adjudged cases and elementary writers announce well established legal propositions, could be sustained by authorities without number; and applying them to the facts of the case under consideration, one is forced to the conclusion that the decree of the circuit court was warranted by the evidence. For nearly eight years after learning that Prichard, in disregard of their instructions, had purchased the property for himself, they slept upon their rights, and seem never to have been aroused to assert them, until a railroad was constructed through the county and along these lands, enhancing their value from seven to tenfold. The road was completed in 1871, and the suit commenced in 1872, and the conviction is forced upon the mind, by the evidence, that, if the lands, instead of advancing, had declined in in value, neither this, nor the circuit court, would have

been called upon to pass upon this case. But it is unnecessary to extend remarks on the subject. A statement of the evidence and the principles of law applicable, are sufficient to dispose of the case, so far as the parties who answered are concerned.

But the adult defendants stood upon their demurrer, and it is now contended, that by the demurrer defendants having admitted the fact, plaintiffs are entitled to a decree against them, if the demurrer was properly overruled. We shall not notice the grounds of the demurrer discussed in the briefs, not because they are not worthy of consideration, but because upon one ground the demurrer was well taken, and it presents a question of less difficulty. This suit was commenced in 1872. The cause of action arose in 1863. Plaintiffs allege that Prichard died in 1864, and that portions of the land in controversy have been sold and conveyed by his heirs to third parties. In their petition, the plaintiffs state, that they had no knowledge that Prichard bought the land until a long time after the sale. They do not say how long a time elapsed after the sale before they became acquainted with that fact. They do not say when they did learn that fact, and omitting so to state, under the circumstances, was a fatal defect in the petition. In the case of *Badger v. Badger, supra,* Mr. Justice Grier delivering the opinion of the court, quoted and approved the following authority: " The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill, otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations."

In *McQuiddy v. Ware,* 20 Wallace 19, the court said:

2. LACHES: practice: pleading.

" These proceedings were begun early in the war, and yet no move is made to disturb them until July, 1871, more than six years after hostilities ceased. Why this delay? The complainant says he was in ignorance of them until recently, and that as soon as he ascertained them he took steps to assert his rights. *Such a general allegation will not suffice to provoke the interposition of a court of equity.*" We italicize that portion of the extract bearing particularly upon the question under consideration.

In *Marsh v. Whitmore*, 21 Wallace 184, the court, Mr. Justice Field, said : ".At any rate, the claim now presented is a stale one. The complainant does not set forth specifically any grounds which could have constituted impediments to an earlier prosecution of his suit. He does not even inform us when he first became acquainted with his supposed wrongs. His language is that he was not aware of the purchase by defendant *until lately*—language altogether too vague to invoke the action of a court of equity." He then quotes the language or the court in *Badger v. Badger*, the same above quoted by us, and concludes : " The reasons here stated apply to the present case and justify the decree of the circuit court dismissing the complainant's bill."

In Hill on Trustees 267, the learned author remarks : " However, it has been decided that a bill charging fraud in obtaining an estate cannot be demurred to on the ground of long acquiescence; for the operation of delay, as a bar to the relief, is a conclusion from facts, and is not a matter of law." But, in the note to that paragraph, it is said : " It is now established in the United States, contrary to the doctrine stated in the text, and to some earlier cases, that when it appears on the face of the bill that the statute of limitations, or lapse of time is a bar, the objection may be taken by a demurrer. The complaint, if there be circumstances accounting for the delay, or bringing the case under one of the exceptions of the act, must state them in the first instance, that they may be put in

issue by the answer." And for this doctrine Mr. Bispham cites a number of American authorities.

This is not in conflict with the doctrine of *Kelly v. Hurt* 61 Mo. 466. It was there said that " mere lapse of time, short of the period fixed by the statute of limitations will not bar a claim to equitable relief, where the right is clear, and there are no countervailing circumstances. Here the countervailing circumstances appear in the petition. The statute is imperative, that the time fixed by it shall bar, but it does not affect the rules of equity pleading, which prevailed before it was applied to suits denominated chancery causes before the adoption of the code. It no more affects the rules of equity pleading, as to laches, than it does the doctrine of equity on the subject of laches, and it could as well be maintained that no length of delay, short of the statutory time, will be such laches as will avail a defendant, as that it has changed the rules of equity pleading. The only change effected by the statute is to make it imperative in all cases to allow the statutory bar. Before, the courts of equity, by analogy, allowed it when not inequitable, now they are to allow it without regard to any facts the plaintiff may set up as a reason for his delay.

In *Landrum v. The Bank*, 63 Mo. 56, the court said : " Laches is an equitable defense, and there is no artificial, fixed or determinate rule on this subject, but each case, as it arises, must be decided according to its own particular circumstances."

The facts constituting the laches in that case were alleged in the answer, but we do not regard that decision as an authority against the views here expressed. If the time limited by the statute for the commencement of the action has elapsed, the defendant, if it appear upon the face of the petition, may demur ; if not, he may plead the statute. If the statutory time has not elapsed, but the laches appear upon the face of the petition, it may be taken advantage of by demurrer. If plaintiff has been guilty

of laches, but it does not appear in the petition, the defendant, to avail himself of it, must plead it as a defense. It is true, as was observed by Judge Wagner in *Landrum v. The Bank, supra*, that "Laches is an equitable defense," and, if the petition does not disclose laches, the defendant must plead it as a defense; but no good reason can be assigned why, if it appear upon the face of the petition, it may not be taken advantage of by demurrer, as well as when the petition shows that the time prescribed by the statute as a bar has elapsed.

The distinction between law and equity has not been abolished in this State. The modification is as to the form of action, and the change effected is embraced in section 1, page 999, Wag. Stat., which provides that "there shall be in this State but one form of action," &c.

The principles of equity are as deeply imbedded in our law as before the adoption of the code, and he would be regarded as a rash legislator who would propose the entire elimination of equity from our system of jurisprudence. It is so interwoven with the common law, that nothing but confusion and disaster could result from a change so radical. It has not been made, or attempted in this State, and any effort in that direction would be resisted by every one who duly appreciates the salutary and conservative influence of equity upon strict, inflexible law.

In this case the laches appears upon the face of the petition; not mere lapse of time, which, of itself, does not constitute laches, but, also the death of Prichard in 1864 and the alienation of a portion of the lands by some of his heirs to third persons. A delay of nine years in instituting their suit had occurred, and instead of stating when they first came to the knowledge of the fact that their attorney had purchased the lands for himself, plaintiffs contented themselves with the allegation that they had no knowledge of that fact until a long time after the sale. If they had stated when they were first informed that he had

so purchased, and had instituted their suit within a reasonable time thereafter, there would have been no laches disclosed by the petition.

The court should have sustained the demurrer, but, inasmuch as the bill was dismissed as to all the defendants, the judgment is affirmed.  All concur except HOUGH, J., who dissents.

AFFIRMED.

HOUGH, J., DISSENTING.—I think the demurrer was properly overruled.  It is not pretended that there is any want of equity in the petition.  Our present statute of limitations is applicable to all civil actions, whether they are such as were heretofore denominated actions at law, or suits in equity; and when the statute allows ten years in which to bring a suit, and the plaintiff begins it within that time, I do not believe that he is required to state, in his petition, any excuse for not having brought it sooner. If there has been such acquiescence as to bar a recovery, it must be pleaded as a defense.

Even though the demurrer should have been sustained, the judgment of this court is, in my opinion, wrong, as in that event, the plaintiffs would have been entitled to amend, and the case should have been remanded to permit them, if they chose, to make an amendment.