Kelly v. Hurt.

*William R. Donaldson* and *Smith & Krauthoff* for appellant.

This is an action instituted before a justice of the peace to recover double damages for certain animals alleged to have been killed by the defendant's cars. The judgment must be reversed because the record fails to show that the justice had jurisdiction. The statement filed before him is not in the transcript, and there is nothing else in the case to show the facts necessary to confer jurisdiction.

---

KELLY, *Appellant*, v. HURT.

| 74 | 561 |
|----|-----|
| 96 | 338 |
| 74 | 561 |
| 105 | 69 |
| 74 | 561 |
| 161 | 644 |

1. **Limitations in Equitable Actions.** A court of equity, when enforcing legal or analogous rights, will generally adopt that limit of time which is prescribed by the statute of limitations; but where the relief sought is based upon a right purely equitable—where it is cognizable alone in a court of conscience—it acts solely upon its own inherent rules altogether outside of and independent of the statute of limitations. If there has been gross laches in prosecuting the claim, or long acquiescence in the operation of adverse rights, it will refuse to interfere, though less than the statutory period has elapsed. Per SHERWOOD, C. J.

   *Contra.* The statute of limitations in this State applies to all civil actions, to those which were formerly denominated suits in equity as well as to actions at law. Mere lapse of time, short of the period

*Not furnished the reporter for publication.

36 -71

fixed by the statute of limitations, will not bar a claim to equitable relief where the right is clear and there are no countervailing circumstances. (Re-affirming *Kelly v. Hurt*, 61 Mo. 466.) Per HOUGH, HENRY and NORTON, JJ.

2.   **Estoppel.** If a mortgageor, with full knowledge of irregularities in the sale of his land, stands by without complaint for a period of years, whilst the purchaser clears the land, pays taxes, both back and current, and makes valuable and lasting improvements upon it, he will be held estopped from challenging the sale.

3.   **Pleading.** If the defendant in an action at law, having an equitable defense, fails to present it, he cannot afterward make it the ground of an independent action against the former plaintiff. Per SHERWOOD, C. J. NORTON, J., concurring; HOUGH and HENRY, JJ., dissenting.

*Appeal from Cooper Circuit Court.*—HON. G. W. MILLER, Judge.

AFFIRMED.

This was a suit brought January 19th, 1874, to set aside a sheriff's deed made upon a foreclosure of a school fund mortgage. The lands consisted of two forty acre tracts and two eighty acre tracts. The petition asked to set aside the sale and deed because the lands, though susceptible of division, were sold in mass, when it was unnecessary to sell the whole to pay the debt, in consequence of which, it was alleged, they were sacrificed. The defenses were that the tracts were so situated as to constitute one farm and had long been so used, that there was no sacrifice, and that plaintiff was estopped by his conduct from attacking the sale.

The following facts appeared in evidence: In 1849 Kelly borrowed money from the school fund of Saline county, for which he executed a mortgage upon the land in question. In May, 1864, a foreclosure took place under order of the county court, defendant Hurt becoming the purchaser. The debt amounted to $1,085.42. The lands were sold in a body and brought $1,382.66. Kelly refusing to deliver possession, Hurt sued in ejectment, and in 1869

Kelly was ousted under a writ of possession in the hands ·of the sheriff. Hurt then took possession and immediately began clearing and fencing the place and erecting houses, barns, etc. In the course of five years he expended in this way some $5,000, besides paying the taxes, both back and current. Kelly knew that the sale was made in mass, but ·did not bring this forward as a defense in the ejectment ·suit. He also knew of the improvements and expenditures that were being made from time to time by Hurt. There was also evidence that shortly after the sale Hurt had offered to let Kelly have his land back at $100 less than he had given at the sale, but Kelly had declined, insisting that the government then (in 1864) in existence in the State of Missouri was illegal and the sale a nullity.

*Chas. A. Winslow* and *Shackelford, Yerby & Vance* for appellant.

Nothing short of an equitable estoppel will bar this action, less than ten years having elapsed before it was brought. Story Eq. Jur., (9 Ed.) § 1537; *Bollinger v. Chouteau*, 20 Mo. 89; *Kelly v. Hurt*, 61 Mo. 463; *Bradshaw v. Yates*, 67 Mo. 221; *Spurlock v. Sproule*, 72 Mo. 503; *Bales v. Perry*, 51 Mo. 449; *Allore v. Jewell*, 94 U. S. 506. The mere silence of Kelly worked no estoppel. The deed under which Hurt purchased was of record, and the proceedings which resulted in the sale were such as he was bound to notice. He knew the nature of the power, and that he had purchased the land under it in mass, just as well as Kelly did. The truth was equally known to both parties, and anything Kelly could have said would not have added to Hurt's stock of information on the subject. He made his improvements with full knowledge of the infirmity of his title, and amply warned by the stubborn resistence Kelly was making that it would be contested when opportunity offered. Besides, the evidence showed that up to the time of the trial Hurt had received in the way of rents

about $1,500 more than he had expended for improvements and taxes. *Thornburg v. Jones*, 36 Mo. 521; *Picot v. Page*, 26 Mo. 415; *Bales v. Perry*, 51 Mo. 449; *Spurlock v. Sproule, supra.* The delay in this case was not unreasonable. Defendant's title was actively resisted until 1869, at which time he first got the possession. He did not commence his improvements until sometime in 1870, and this suit was commenced in January, 1874, a delay of less than four years.

*Philips & Jackson* for respondent.

Whatever may have been Kelly's rights in this matter they were forfeited by his own misconduct, delay and laches. In cases of concurrent jurisdiction, courts of equity consider themselves bound by statutes of limitation, which govern courts of law. But in cases cognizable at equity alone, while the courts act upon the analogy of like limitations, yet in cases of estoppel, lapse of time and the staleness of the claim, they act upon their own inherent doctrine of discouraging the disturbance of society. They will refuse to interfere where there has been gross laches, or acquiescence in the assertion of an adverse right, and often refuse to entertain a bill where a much less period has elapsed than that prescribed by statute for the government of courts of law. *Badger v. Badger*, 2 Wall. 87, 94; *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 591; *Harwood v. R. R. Co.*, 17 Wall. 78, 81; *Moreman v. Talbott*, 55 Mo. 392; *Davis v. Fox*, 59 Mo. 125; *Kellogg v. Carrico*, 47 Mo. 162; *State v. West*, 68 Mo. 229; *Landrum v. Union Bank*, 63 Mo. 48; *State, Spear v. Perth Amboy*, 38 N. J. L. 428. The court, *sua sponte*, will take notice of the delay, even when not pleaded. *Sullivan v. R. R. Co.*, 94 U. S. 807; *Badger v. Badger*, 2 Wall. 94. And the complainant must satisfactorily explain his delay. *Godden v. Kimmell*, 99 U. S. 211. Kelly should have set up the alleged irregularity in the sale as a defense to Hurt's ejectment. When Kelly saw

Hurt making vast outlays of money on this land, paying taxes, back and current, covering a period of fifteen years, and treating this land as his, it was his duty, at the inception of these outlays, to have asserted his claim. *Follansbe v. Kilbreth*, 17 Ill. 522; *Collins v. Rogers*, 63 Mo. 515.

SHERWOOD, C. J.—This case will be considered from three points of view: The laches of Kelly in bringing this suit; the equitable estoppel which, in consequence of his conduct, has arisen against him, and his failure in the ejectment suit to urge those matters, as matters of defense, which are now relied on as grounds of equitable and affirmative relief.

## I.

And first, as to the laches of Kelly. The case of *Hurt v. Kelly*, 43 Mo. 238, was decided by this court in January, 1869. Kelly, in the following March, surrendered possession of the premises to Hurt. The present proceeding was not begun until January, 1874, nearly ten years after the sale, and over five years after the surrender of possession, and about four years after defendant, with the knowledge of Kelly, had taken possession of the premises thus surrendered. This conduct on the part of Kelly, and other acts detailed in this record, are sufficient to preclude him from successfully appealing to a court of equity for relief. Nor does his petition for such relief set forth any grounds excusing his delay.

Courts of equity when enforcing legal or analogous rights, as in administering remedial justice they are sometimes called upon incidentally to do, will generally adopt that limit of time which is prescribed by the statute of limitations. Adams Eq., 227. But when the relief sought is based upon a right purely equitable, where it is cognizable alone in a court of conscience, then that court acts solely upon its own inherent rules altogether outside of, and independent of the statute of limitations. As was

said in *Landrum v. Union Bank*, 63 Mo. 56: "Laches is an equitable defense, and there is no artificial, fixed or determinate rule on this subject, but each case, as it arises, must be decided according to its own particular circumstances." In *Badger v. Badger*, 2 Wall. 94, when speaking of the subject of laches, the court says: "Courts of equity acting upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the operation of adverse rights." In *Sullivan v. Railroad Co.*, 94 U. S. 807, Mr. Justice Swayne says: "To let in the defense that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainant, the court will, upon that ground, be passive, and refuse relief. Every case is governed chiefly by its own circumstances; sometimes the analogy of the statute of limitations is applied; sometimes a longer period than that prescribed by the statute is required; in some cases a shorter time is sufficient; and sometimes the rule is applied where there is no statutable bar. It is competent for the court to apply the inherent principles of its own system of jurisprudence, and decide accordingly." Mr. Justice Miller, when speaking for the court in *Twin-Lick Oil Co. v. Marbury*, 91 U. S. 591, with regard to the time when a party should exercise his option to have a sale set aside, says: "This has never been held to be any determined number of days or years as applied to every case, like the statute of limitations, but must be decided in each case upon all the elements of it which affect that question." Other authorities cited for defendant establish the same position.

We need not discuss this branch of the subject at greater length, both because its discussion is but that of discussing an elementary, familiar and fundamental prin-

ciple, and because, also, that subject has been so recently
and exhaustively discussed in *Bliss v. Prichard*, 67 Mo. 181.
Judge HENRY, in that case, after citing and quoting from a
large number of authorities showing that laches will con-
stitute a bar to equitable relief, says : " The distinction
between law and equity has not been abolished in this
State.  The modification is as to the form of action, and
the change effected is embraced in section 1, page 999,
Wagner's Statutes,which provides that there 'shall be in this,
State but one form of action,' etc.  The principles of equity
are as deeply imbedded in our law as before the adoption
of the code, and he would be regarded as a rash legislator
who would propose the entire elimination of equity from
our system of jurisprudence.  It is so interwoven with the
common law, that nothing but confusion and disaster could
result from a change so radical.  It has not been made, or
attempted in this State, and any effort in that direction
would be resisted by every one who duly appreciates the
salutary and conservative influence of equity upon strict,
inflexible law."

## II.

But apart from the acquiescence and delay of Kelly,
from which equity, in circumstances like the present, will
deduce cogent presumptions of waiver and abandonment
of a right, (Kerr on Fraud and Mistake, 303,) let us discuss
the second branch of our subject.  Hurt was clearing the
land bought; paying taxes, both back and current; mak-
ing valuable and lasting improvements, and expending
large sums of money in so doing, while Kelly, cognizant
of all, remains supinely and apparently indifferent.  This
conduct must estop him and thwart his claim for relief.
Abundant authority establishes the correctness of this po-
sition.  *Evans v. Snyder*, 64 Mo. 516; *Collins v. Rogers*, 63
Mo. 515 ; *Stevenson v. Saline Co.*, 65 Mo. 425 ; *Follansbe v.
Kilbreth*, 17 Ill. 522 ; *Dickerson v. Colgrove*, 100 U. S. 578.

## III.

We are thus brought to the third point proposed for discussion. In the frequently cited case of *Foster v. Wood*, 6 Johns. Ch. 86, Chancellor Kent, in considering the question whether a party, against whom judgment had been recovered at law, was entitled to come into a court of chancery for relief, said : " The rule is, that chancery will not relieve against a judgment at law, on the ground of its being contrary to equity, unless the defendant in the judgment was ignorant of the fact in question pending the suit. or it could not have been received as a defense, or unless he was prevented from availing himself of the defense by fraud or accident, or the act of the opposite party, unmixed with negligence or fraud on his part." The gist of the rule thus tersely enunciated is, that he who is sued at law and is cognizant of a defense to the action—a defense cognizable at law—cannot, if he neglect to interpose such defense, obtain in a court of equity, redress based on that, which, if pleaded in the former proceeding, would have afforded him ample and adequate protection. Let us see whether this rule will apply to the case at bar.

Our code provides that : " The defendant may set forth by answer, as many defenses and counter-claims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both." R. S. 1879, § 3522.

This language is identical with that of the code of New York, from whence our code was derived. Our own code, also, as well as that of New York, authorizes affirmative relief to be given by the judgment to a defendant in the action. R. S. 1879, § 3673. In that state it is held that under the present judiciary system, the functions of the courts of the common law and chancery being united in the same tribunal, the distinction between actions at law and suits in equity and the forms of such suits and actions abolished, that the defendant may by answer set

forth his defense, whether heretofore denominated legal or equitable, or both; that the intent of the legislature is very clear that all controversies respecting the subject matter of the litigation should be determined in one action, and the provisions are adopted to give effect to that intent; that under the head of equitable defenses are included all matters which would before have authorized an application to a court of chancery for relief against a legal liability, but which, at law, could not be pleaded in bar; that there is neither necessity nor propriety in resorting to a separate action for that relief which could have been originally obtained, and that the question now is, ought the plaintiff to recover, and anything which shows that he ought not, is available to the defendant, whether formerly of legal or equitable cognizance—whether, in a word, according to the whole law of the land, applicable to the case, the plaintiff makes out a right which he seeks to establish, or the defendant shows that the plaintiff ought not to have the relief sought for. *Dobson v. Pearce,* 12 N. Y. 156; *Crary v. Goodman,* 12 N. Y. 266; *Ferguson v. Crawford,* 70 N. Y. 253; *Phillips v. Gorham,* 17 N. Y. 270.

In *Winfield v. Bacon,* 24 Barb. 154, the court say: "It is also true, as a general rule, that the defendant who has an equitable defense to an action, being now authorized to interpose it by answer, is bound to do so, and shall not be permitted to bring a separate action for the purpose of restraining the prosecution of another action pending in the same court." In *Savage v. Allen,* 54 N. Y. 458, the doctrine just quoted is approved, and it is there held that there should not be a second suit for relief where it can be obtained by defense in the first; that a proceeding to enjoin an action to restrain the prosecution of an ejectment suit, could not be maintained; that if plaintiff had any title, legal or equitable, it might and should have been interposed as a defense in the ejectment suit. In a still later case, that of *Mandeville v. Reynolds,* 68 N. Y. 528, the principles enunciated in *Savage v. Allen, supra,* are spoken of approvingly,

Folger, J., remarking: "The court acts upon the matter involved in the action, now, in a double capacity, as a court of law and one of equity. &ast; &ast; It would be quite an abnegation of the conjoint power and jurisdiction of the court, to proceed in the case as long as the issues are of legal cognizance, and as soon as they become of equitable cognizance, to turn the party over to another action, in perchance the same court, before the same judge, to have, in another trial, that matter proved and decided, &ast; &ast; which, as the powers of the court are in constant, reciprocal activity, may as well be determined in one trial by the same tribunal. &ast; &ast; The intent of the code is clear, that all controversies respecting the matter involved in litigation, shall be determined in one action."

These, then, being the principles ordained by the code, how do they apply to, or in what manner affect, this cause? They do so in precisely this way. Before equitable defenses were cognizable at law, a party, as we have already seen, who had, and was cognizant of, his defense at law and failed to plead the same, (and in consequence judgment was recovered against him,) could not, afterward, successfully apply to a court of chancery for relief, and this upon the obvious ground, of his remedy at law having been adequate and ample. No necessity existed for invoking the extraordinary powers and processes of a court of chancery, the principle being that he had his day in a court of competent jurisdiction; had a complete defense to the action; was aware of that defense, and owing solely to his own negligence he failed to avail himself of it. In consequence of the changes effected by the code, as already noted, what was formerly denominated an equitable defense, is just as available, just as potent, in precluding a recovery against the party pleading it, as was a legal defense in a court of common law. The term equitable defense, as heretofore seen, is of even a broader scope and more comprehensive nature, because it includes all matters which would before have authorized an application to a court of chancery for

relief against a legal liability, and authorizes affirmative relief to be granted to the party pleading it. Under the new regime then, why should not the same doctrine be applicable to equitable as was formerly applied in like circumstances to legal defenses? The party has his day in court in the one case as well as in the other; his defense is as available in the one case as in the other; and no sound reason is perceived why a court of equity, other things being equal, should deny the prayer for relief in the one instance, and yet grant it in the other. Surely no court whose salient characteristic from the time of its origin has been to regard substance rather than form, and reason rather than empty technicalities, could pursue so inconsistent a course. The rule repeatedly laid down by Lord Chancellor Cottenham is, in this connection, an apt one: That it was the duty of a court of equity to "adapt its practices and course of proceeding, as far as possible, to the existing state of society, and apply its jurisdiction to all those new cases, which, from the progress daily making in the affairs of men, must continually arise." 2 Redf. Railw. 310, § 9, and cases cited.

In the case at bar, Kelly, the defendant in the action of ejectment, was aware of and could have availed himself of the same matters of equitable defense upon which the present proceeding is now bottomed. He failed to seize the opportunity presented, and that opportunity cannot be resuscitated by resorting to a separate suit. This is true whether we abide by the evident behests and theory of the code, or whether we apply those principles of equity jurisprudence which deny that relief which could have been obtained elsewhere. Nor is this application of those principles a novelty in this court. In *Shelbina Hotel Association v. Parker*, 58 Mo. 327, a suit was brought in the nature of a bill in equity to set aside an award on the ground of mistake. The plaintiff had opportunity to have prevented the judgment on the award going against him, but he failed to do this, and in deciding that case we remarked: "After

the numerous adjudications on this point, it ought to be regarded as settled, that when a party to an action, being fully apprised of his rights, suffers judgment to go against him, when he might by the exercise of reasonable diligence in making his defense, prevent a recovery        *        * he should not be allowed in a subsequent proceeding to re-agitate questions which either were, or else would have been, adjudicated at the former trial, but for his unexcusable neglect."

## IV.

It must not be understood by the foregoing remarks that we hold that Kelly would have been entitled to re-cover, even had his equitable defense been pleaded in the original action. It is very questionable from a consideration of all the evidence, whether the sale took place in such circumstances, or was attended by such results, as would authorize its being set aside, because it was a sale in gross, instead of one according to the smallest legal sub-divisions. *Benkendorf v. Vincenz*, 52 Mo. 441; *Carter v. Abshire*, 48 Mo. 300; *German Bank v. Stumpf*, 73 Mo. 311. We are not prepared, therefore, to hold that there was any error committed on this point, and so we affirm the judgment.

HOUGH, HENRY and NORTON, JJ., concur in the second paragraph of this opinion, and NORTON, J., also in the third paragraph. HOUGH, HENRY and NORTON, JJ., dissent from the first, and HOUGH and HENRY, JJ., from the third paragraph of this opinion.

HOUGH, HENRY AND NORTON, JJ.—We dissent from the propositions sought to be established in the first paragraph or subdivision of the foregoing opinion. We adhere to what was said by this court on the subject of the statute of limitations and the staleness of the plaintiff's claim, when this case was first here, (61 Mo. 463, 466,) and to

what has been subsequently said by this court on the same subject in *Bliss v. Pritchard*, 67 Mo. 181, 190 ; *Bradshaw v. Yates*, 67 Mo. 221, 232, and *Spurlock v. Sproule*, 72 Mo. 503.