## BRADSHAW, *Appellant* v. YATES.

1. **Setting Aside a Deed for Undue Influence.** In a suit to set aside a deed as having been obtained by undue influence practiced upon the plaintiff by her step-father, the defendant, it was admitted by the pleadings that when plaintiff was nine years of age her mother, being a widow, intermarried with defendant, and from that time plaintiff lived with defendant as a member of his family, that she was taught by her mother to look upon defendant as her father; that he became her guardian and acquired her complete confidence; that in proceedings for the partition of the estate of her deceased father, a life estate in certain land was assigned to her mother for dower, while other lands were set apart in fee to the children, including plaintiff; that by the repeated representations and importunities of defendant, she was induced to believe that a wrong had been done in making the partition, and to promise that when she came of age she would convey to defendant her interest in the dower land; that when she had attained the age of twenty-two years, and while she was still a member of his household, under his influence, and impressed with the belief that it would be but an act of justice to convey her interest to him, she carried out her promise, and made the conveyance; *Held*, that these facts constituted at least a *prima facie* case of legal fraud, and imposed upon defendant the burden of showing that absolute fairness, adequacy and equity characterized the transaction.

2. **Laches.** Courts of equity discountenance laches, and deny aid to those who have slept upon their rights for such length of time that their assertion would be against good conscience and operate as a fraud. Mere lapse of time, however short of the period fixed by the statute of limitations, will not bar a claim to equitable relief where the right is clear, and there are no countervailing circumstances.

    *Case adjudged.* Nearly ten years had elapsed since the execution of a deed procured by undue influence; but, for a year afterwards, the grantor remained in the grantee's house, and under his influence, and then she became a *feme covert;* the grantee, too, had the right to use and occupy the land until the expiration of an existing life estate; suit was brought within three years after that event, and it was not clear that, prior to the suit, she was free from the delusion under which she made the deed; *Held*, that, under these circumstances, her inaction did not debar her from equitable relief.

3. **Setting Aside a Deed for Undue Influence:** MEASURE OF RE-LIEF: TENANT IN COMMON. In the present case the plaintiff had a clear right to have a deed which she had made to an undivided half

of a tract of land set aside as having been obtained by the exercise of undue influence, but she had permitted almost ten years to elapse before bringing her suit. In the meantime the defendant, who besides being the grantee in this deed, was the owner of the other half interest in the land, had, with the knowledge of plaintiff, and without objection from her, made permanent and valuable improvements on the land; *Held*, that, under these circumstances, the deed ought not to be set aside without terms, but the value of the land, as it was before the improvements were made, should be ascertained, and if defendant would pay plaintiff that sum, with interest, within a time to be fixed by the trial court, the deed should stand, otherwise it should be set aside.

*Appeal from Lewis Circuit Court.*—HON. E. V. WILSON, Judge.

*Glover & Shepley* for appellant.

1. A deed is deemed absolutely void if made during the existence of a confidential relation; and the relation of parent and child existed in this case, at the execution of the deed, and continued for sometime after, and up to the marriage of the plaintiff. If the relation of parent and child had ceased, still the deed must be held void, unless it is shown that the influence of the relation had ceased, and this cannot be done while both step-father and mother are proved to have solicited and urged the making of the deed, entreating her, as a dutiful child, to make it. *Wright v. Proud*, 13 Vesey, Jr. 137; *Dawson v. Massey*, 1 Ball & Beatty 229; *Lake v. Raney*, 33 Barb. 68, 49; *Lee v. Dill*, 11 Abb. Pr. R. 219; *Archer v. Hudson*, 7 Beav. 558, 551; *Maitland v. Irving*, 15 Simon 437; *Gale v. Wells*, 12 Barb. 85; *Garvin v. Williams*, 44 Mo. 470; *Cadwallader v. West*, 48 Mo. 483.

2. The defense of acquiescence or lapse of time has no place till after the perfect freedom and independence of the grantor. *Hatch v. Hatch*, 9 Vesey, 292; *Taylor v. Taylor*, 8 How. 183; *Hylton v. Hylton*, 2 Vesey, Sr. 547; *Huguenin v. Baseley*, 14 Vesey, Jr. 273; *Bury v. Openheim*, 26 Beav. 598; *Chambers v. Crabbe*, 34 Beav. 459; *Wright v.*

*Vanderplank,* 8 DeGex, McN. & G. 146 ; *Goddard v. Carlisle,* 9 Price 169; *Sercombe v. Saunders,* 34 Beav. 382; *Poston v. Gillespie,* 5 Jones Eq. 264; *Berdoe v. Dawson,* 34 Beav. 603 ; *Miller v. McIntyre,* 6 Peters 61 , *Elmendorf v. Taylor,* 10 Wheat. 168, 152 , *Oakland v. Carpentier,* 13 Cal. 540 ; *Weaver v. Froman,* 6 J. J. Marsh. 214; *Keeton v. Keeton,* 20 Mo· 530.

3. Mrs. Yates held a particular estate for life as tenant in dower, and until her death, there was no adverse possession, and the statute of limitations could not begin to run. *Honner v. Morton,* 3 Russ. Ch. 65 , *Rabsuhl v. Lack,* 35 Mo. 316; *Gray v. Givens,* 26 Mo. 291 ; *Salmon v. Davis,* 29 Mo. 176; *Reaume v. Chambers,* 22 Mo. 36.

4. Immediately upon plaintiff's marriage, she fell under the control of her husband, and has never been a free woman for a moment. *Aylward v. Kearney,* 2 Ball & Beatty 463; *Gouland v. DeFaria,* 17 Vesey, Jr. 25, 20; *Sharp v. Leach,* 31 Beav. 503; *Salmon v. Cutts,* 4 DeGex & Smales 132.

5. When a deed is impeached for fraud, the grantee must prove he paid the consideration mentioned in it. *Clarkson v. Hanway,* 2 P. Williams 203; *Walt v. Grove,* 2 Sch. & Lef. 501; *Tribble v. Oldham,* 5 J. J Marsh. 144; *Bridgman v. Green,* 2 Ves., Sr. 628.

*H. S. Lipscomb and J. G. Blair* for respondent.

1. Plaintiff comprehended her rights and all the facts involved, and acted freely and of her own accord. Defendant has shown that he did not create her intention to convey, and that the deed was not the result of undue influence, but that his dealing with her was fair and frank. The court below, with all the witnesses before it, and judging the matter sworn to, and of the manner and deportment of the witnesses, has, by its judgment, found in favor of the defendant, and its finding should not be disturbed. *Sharpe v. McPike,* 62 Mo. 300; *Biggerstaff v. Hoyt,* 62 Mo. 484; *Ames v. Gilmore,* 59 Mo. 548-9.

2. For nearly ten years plaintiffs have acquiesced in the transfer, and it is now too late to assail it. *Morse v. Royal*, 12 Vesey, Jr. Ch. 378.

3. Plaintiffs, both of full age and with perfect knowledge of their claim as now pretended, stood by for nearly ten years and silently witnessed the improvements as they were made upon the land by defendant. The dower-estate of Mrs. Yates did not close their mouths, nor were the courts closed against a bill to set aside the deed complained of. They are estopped from claiming now. *Collins v. Rogers*, 63 Mo. 515; *Landrum v. Union Bank*, 63 Mo. 56; Bigelow on Estoppel, pp. 488, 490, 500, 503; 2 Story Eq., §§ 694-5; *Petit v. Shepherd*, 5 Paige 493; *Morse v. Royal*, 12 Vesey, Jr. Chy. 378; 1 Story Eq., Secs. 385, 388, 389; 2 Story Eq., Secs. 1540, 1541; *Irvine v. Irvine*, 9 Wallace 617; *Hartman v. Kendall*, 4 Ind. 403; *Wallace v. Lewis*, 4 Har. (Del.) 75; *Wheaton v. East*, 5 Yerg. 41; *Rice v. Dewey*, 54 Barb. 470; *Cresinger v. Welch*, 15 Ohio 156; Hermann on Estoppel, 409, 10, 11, and 415, 478, 494; *Moreman v. Talbot*, 55 Mo. 392. It was the duty of plaintiffs to speak long ago. Silence in this case until after improvements made is a fraud. The fact that Mrs. Bradshaw is a married woman will not aid her. *Femes covert* and infants are prevented by estoppel from profiting by their own wrong or fraud. Hermann on Estop. 477–8; *Evans v. Bicknell*, 6 Vesey, Jun. 174; *Fulton v. Moore*, 25 Penn. 468; *Drake v. Glover*, 30 Ala. 382.

NORTON, J.—This is a proceeding in equity, commenced in the circuit court of Lewis county, on the 26th day of March, 1873, for the purpose of setting aside a deed made by plaintiff, Elizabeth Bradshaw, in April, 1863, conveying to defendant certain land therein described. It is substantially alleged in the petition that William Barclay died in April, 1848, leaving a widow and three children, of whom plaintiff, Elizabeth, was one, and possessed, besides personal estate, of three hundred and ten acres of land;

that Sarah Barclay, the widow, lived in the mansion house on said land till 1849, when she intermarried with the defendant, who, with his four children, removed to said mansion house, and there, with the said Sarah and her children, made up the household; that, at the time of her mother's marriage with defendant, plaintiff was about nine years old; that defendant, in 1852, was appointed her guardian, and acted as such till 1864, when he made a final settlement with her. It is further alleged that in 1859 partition of the real estate was made by virtue of an order of the Lewis county circuit court, in which 105 acres of the land was set apart to plaintiff, and 100 acres assigned and admeasured to her mother as dower; that she was enjoined by her mother to treat and regard defendant as her father, and that, by virtue of his relation as father and guardian, she trusted defendant implicitly, and relied solely upon him to protect and control her pecuniary interests absolutely; that soon after said dower was assigned, defendant represented to plaintiff that in right and justice her mother was entitled to an absolute instead of a life estate in the land assigned her, and that the commissioners would have so allotted it to her but for the objection of Mr. Sublett, who had married Sarah, the sister of plaintiff; that he was justly entitled to said one hundred acres in fee; that he had applied to said Sublett and Sarah to do him justice and convey to him said land, which they had refused to do, and appealed to plaintiff not to treat him in like manner, but to convey her interest to him as an act of justice and right. It is also alleged that by reason of such appeals and the repeated and continued importunities of defendant, plaintiff, while yet a minor, was induced to promise defendant that she would convey to him all her interest in said land; that relying on the representations of defendant that her mother had been wronged by the commissioners, and that she ought in justice to make him a deed, she promised to do so when she attained her majority; that these importunities were from time to time continued

till finally, about the time of defendant's final settlement with her as guardian, and while living with defendant, as a member of his family, and under the influence acquired by defendant over her, and relying upon his representations that what he claimed was rightful, she was induced to execute the deed conveying to defendant her interest in said dower land; that although four hundred dollars was named in said deed as the consideration, no part of it was paid or to be paid, and that the same was procured by fraud, undue influence and misrepresentations of defendant.

The defendant's answer is as follows: "The defendant, for answer, admits the making of the deed, but denies that the same was obtained by him from said Elizabeth by fraud, misrepresentations or undue influence exercised by this defendant over said Elizabeth ; that said deed was made by said Elizabeth long after her arrival to the years of her majority, of her own free will and accord, for a legal and valid consideration." It is further alleged that plaintiff acquiesced in said deed till the suit was brought, and that defendant in the meantime, with the knowledge of plaintiff, and without objection from her, made lasting and valuable improvements on said land, and that she ought, therefore, to be estopped. The cause was tried by the court and judgment rendered for defendant, from which the plaintiffs have appealed to this court.

The main questions presented by the record are the following; 1st. Was the deed in controversy procured 1. SETTING ASIDE by the undue influence of defendant ? 2nd A DEED FOR UN-DUE INFLUENCE. If so, has plaintiff lost her right to the relief she seeks by delay in instituting her suit, and, if not, should the first question be determined in the affirmative, what is the relief which should be accorded to her under the pleadings and evidence ? We think it is admitted by the pleadings that defendant, at the time the deed was executed, sustained the double relation of father and guardian to plaintiff, the relation of father being assumed in

1849, and that of guardian in 1852; that defendant had thus acquired the complete confidence of plaintiff, and rep·resented to her while in her minority, that the commissioners, in making partition of the estate of her deceased father, had committed a wrong in assigning a life, instead of a fee simple, estate to her mother in the one hundred acres of land as dower, that he, in justice, was entitled to said one hundred acres, and appealed to plaintiff to make him a deed in fee of her interest therein as an act of justice and right; that by reason of said appeal and the continued importunities of defendant, plaintiff, while a minor, was induced to promise him that she, on arriving at age, would convey to him such interest; that said promise was made by plaintiff in full reliance on the statements of de-·fendant that he had been wronged, and that, in right and justice, she ought so to convey it; that these importunities and the said promise of plaintiff were repeated till, finally, plaintiff, at about the age of twenty-two years, and about the time of defendant's final settlement with her, as guardian, and while being with him as a member of his family, and entirely under his influence, and relying on his representations, and believing by reason thereof, that the making of the deed was an act of sheer justice, and that she was bound by her promise formerly made, she was induced to execute it. It is also admitted that, although four hundred dollars was the consideration named in the deed, no consideration was paid by defendant therefor, and that at the time of its execution, there was no pretense that any valuable consideration had passed, or was to pass from said defendant to plaintiff therefor.

The only denial which the answer contains is to the conclusion which the pleader in his petition reached upon the allegation made therein, viz: that the deed sought to be avoided was obtained by fraud, misrepresentation and undue influence. This does not amount to a denial of the facts alleged in the petition on which the pleader based the allegation, as a legal conclusion, that the deed was ob-

tained by fraud and undue influence. When this answer was filed, it was a requirement of the law that each allegation should be specifically denied, and if not thus denied, they should be taken as admitted. Taking then the allegations of the petition as confessed, they not only establish the existence of confidential relations between plaintiff and defendant, but an abuse thereof by defendant at and before the execution of the deed, and fully make out, to say the least, a *prima facie* case of legal fraud in the procurement of the deed, thus casting upon defendant the burden of showing that absolute fairness, adequacy and equity characterized the transaction.

In *Street v. Goss*, 62 Mo. 228, it was held that "the rule on this point was of universal recognition, and applies co-extensively with the existence of confidential relations. In such cases it is not necessary to show that fraud or imposition was practiced upon him who bestows the confidence, but simply the existence of such confidential relations, and that during that time the conveyance was made. When this is done, the onus of showing the fairness of the transaction is on him who claims under the conveyance." "When confidential relations are shown to exist, courts of equity, where the inferior makes a conveyance to the superior, look narrowly to the circumstances, and require the act to be done with reasonable knowledge of all the facts necessary to a full understanding of what the grantor is doing." (*Ranken et al. v. Patton et al.*, 65 Mo. 378.)

The allegations of the petition being admitted, because not denied, shows clearly the existence of such relations between the plaintiff and defendant when the deed now assailed was made, and, also, that it was executed by plaintiff to carry out the will of defendant, which, by reason of confidence reposed on account of said relations, had been stamped upon the mind of plaintiff so as to make her thoughts on the subject matter of the transaction the thoughts of defendant. A deed executed under such circ-

umstances can not be allowed to stand in a court of con-science. To give such instruments countenance and support would, in all cases where confidential relations exist, make the weaker party a victim to the rapacity of the stronger, and allow him, to whom interests are confided for preservation and protection, to destroy and appropriate them to his own use.

This is especially applicable in the present case, for even if, in truth, the mother of plaintiff should have had a child's part allotted to her in the land, the subject of this controversy whereby she would have taken the fee, if any obligation at all by reason thereof was cast upon plaintiff, it could have extended no farther than the execution of a deed to her mother. Defendant, by reason of any such supposed obligation, would not in any view have been entitled to the land, and by causing the deed to be made to himself, changed the entire course of descent therein.

To avoid the force of the presumption raised from the facts alleged and admitted, defendant avers that the deed **2. LACHES.** was made on valuable consideration, and of plaintiff's own free will, and that plaintiff had acquiesced therein till this suit was brought, and had seen defendant erecting lasting and valuable improvements on the land without objecting thereto, by reason of all which she should be estopped from now asserting her claim. Although the consideration mentioned in the deed is four hundred dollars, it is perfectly clear from the evidence that no consideration, whatever, was paid. The plaintiff, in her evidence states this, and in this statement she is supported by the evidence of defendant, who testified that no money was paid, and none tendered. Biggs, who was called upon by defendant to take the acknowledgment, swears that defendant, when he came for him, told him that plaintiff had given him the land, because Sublett had treated him so; that he had treated her as his child, and she had treated him as her father. Defendant further tes-

tified that the deed was prepared when plaintiff was not present, and that she had, while in her minority, said she would make him a deed and charge nothing for it; that nearly one year after the deed was made, on the occasion of his final settlement with her, he said: "Bettie, there is due me, as guardian fees, about $138, will you accept that as a consideration for the deed?" to which she assented. Looking at the guardian settlements of defendant in evidence, we are not able to see any room for such a charge. The evidence shows that defendant, after his marriage in 1849, removed with his four children to the house of plaintiff's mother, and that he became guardian in 1852; and that, in each of his annual settlements, he charged plaintiff with board and clothing, &c., $100, till 1857; that he had the use of all the land, that its rental was worth $2.50 per acre; that he, in his settlements, credited himself with 5 per cent. commission, and also charged by the day for the time spent in the business. It further shows that he made his final settlement, as guardian, with plaintiff, in March, 1864, nearly one year after the execution of the deed; that there was no one present at said settlement but defendant and his ward, and that it was made in a detached room, used as a kitchen; that defendant made all the figures, and plaintiff accepted what he said and did as true, and after it was computed, went with defendant to the proper court and entered satisfaction. The settlements of defendant are in evidence, and the following is a summary of them. In his first settlement of 1853, he charges himself with hire of negroes, $100, credits himself with $100 for board, clothing, tuition and medical bills, $2 for services and $8 for taxes, bringing his ward in debt $10; no voucher for tuition or medical bill accompanying settlement. In 1854 he charges himself, on joint account of Elizabeth and Sarah, with hire of negroes, $239.99, and among other things credits himself with $200 for board, clothing, tuition and medical bills, again bringing his ward in debt, there being no

vouchers with the settlement for tuition or medical bills. In 1855 he charges himself with $274.67 hire of negroes, and credits himself with $200 board, clothing, &c , without vouchers, again bringing his ward in debt. In 1856 he makes another joint settlement, charging himself with four years rent of 104 acres of land at $1.50 per acre, and hire of negroes, $326, and credits himself with $200 for building stables and corn-crib; $200 for board, clothing, &c., two-thirds of 9000 rails, $120, shingling house, $59, and two-thirds of fee for procuring assignment of dower, $16, without voucher, and brings himself in debt for the first time to his two wards, $122, or $61 each. In 1857, in another joint settlement, he charges himself with rent of 104 acres of land at $1.50 per acre, balance on last settlement of $122, without interest, and hire of negroes, and credits himself with $81, commission, and $114, two-thirds of re-setting 57,140 rails. No settlement appears to have been made in 1859. In 1860 he makes a settlement as guardian of plaintiff, with balance, $333.50, hire of negroes $113, proceeds of sale of negroes $673, and credits himself among other things, with $62 commission.

These settlements have been adverted to for the purpose of showing that defendant looked well to his own interests, as evidenced by the fact that, for the first four years of his guardianship, he consumed the personal estate of his ward by charging her for board while an inmate of her mother's house, as a member of defendant's family, and living on the land left by her father, from which the family of defendant, as well as that of Barclay, derived their support, and this before partition of the land. They also show a state of facts which would have made it eminently proper that plaintiff should have had in the final settlement, between her and defendant in 1864, nearly one year after the execution of the deed, the advice of some one besides the defendant, who was conversant with such matters. The fact that it was made without the advice of such a person tends strongly to show the implicit reliance

of plaintiff in every thing that defendant did or said in regard to her interests. The evidence, as well as the pleadings clearly show that the deed in question is not supported by any valuable consideration, and that it was made by plaintiff under the false impression that defendant had been wronged, and was entitled by right to the land she conveyed, and that these impressions were superinduced by defendant and his wife.

It is, however, said that plaintiff has acquiesced in the transaction for such a length of time as to bar her right to relief in equity. The doctrine is unquestioned that courts of equity discountenance laches, even to the extent of denying aid to those who have slept upon their rights for such length of time as that it would be against good conscience, and operate as a fraud upon the other party to allow them to be asserted. What shall be deemed due diligence, in the institution of an equitable proceeding of this character, is not susceptible of a definite rule, but must, in a degree, depend upon the circumstances of the particular case, and be governed by the sound discretion of the court. *Bergen v. Bennett*, 1 Caines' Cases 19; *Landrum v. Union Bank*, 63 Mo. 56. There is no especial rule, but each case, as it arises, must be determined by its own particular circumstances. *McQuiddy v. Ware*, 20 Wall. 19.

In *Kelly v. Hurt*, 61 Mo. 466, it was held that mere lapse of time, short of the period fixed by the statute of limitations, will not bar a claim to equitable relief where the right is clear and there are no countervailing circumstances. It results from the principle contained in the authority last cited, that the mere fact that plaintiff did not institute her suit for nearly ten years after the execution of the deed, is not sufficient to bar her right to relief, unless there are circumstances countervailing this right. We do not think the circumstances connected with this case are of that character. Plaintiff, for about a year after the execution of the deed, remained an inmate of defendant's family, and was under the same influence which

operated upon her when the conveyance was executed, till she married in 1864, since which time she has been a *feme covert.* Besides this, defendant had the right to the use and occupancy of the land conveyed, independent of the deed, till the death of defendant's wife, which occurred in 1870, and this suit was brought within three years after that time, and it is not clear that she was at any time prior to the commencement of the suit, free from the delusion under which she made the deed.

But while this inaction of plaintiff may not be deemed such as to deny her a standing in a court of equity, it may, in connection with facts in the case, be considered with reference to the relief she ought to have. Her right to a decree declaring the deed to defendant void, we think, is clear; but when the fact is considered that the interest conveyed by the deed was an undivided half in a tract of land, in which the defendant was the owner of the other half, and that defendant, who was at least a tenant in common, erected on said tract valuable and permanent improvements, costing in the neighborhood of $3,000 with the knowledge of plaintiff, and without objection from her, it would be inequitable to allow her to take the benefit of such improvements. The rights of the parties arising out of this state of facts might be adjusted in an equitable proceeding in partition, as the statutory mode of partition does not divest courts of chancery of jurisdiction in suits for partition. *Spitts v. Wells,* 18 Mo. 468. And in such equitable partition, the portion of the land, on which the improvements were erected, might be assigned to the party erecting them, or compensation made in some other way. As the whole subject is, however, now before us, and as it is the policy of the courts of equity to prevent multiplicity of suits, we are inclined to adjust the rights of the parties without remitting them to another action, and, in doing so, are disposed to adopt a principle analogous to that in ejectment proceedings, where an occupying claimant in good faith makes

*3. SETTING ASIDE A DEED FOR UNDUE INFLUENCE: measure of relief: tenant in common.*

valuable improvements, and shall therefore reverse the judgment and remand the cause, with directions to the circuit court to ascertain the value of the land in question, in 1871, without reference to the improvements made by defendant in erecting a dwelling, and if defendant, in a given time, to be fixed by the court, pay said plaintiff, or bring into court such ascertained value with interest from January, 1871, the title of plaintiff in said land shall be decreed to be in defendant, and, if not so paid, a decree absolute be entered annulling and setting aside said deed. Had the defendant occupied the land under no other title than what he claimed to have acquired under the deed of plaintiff, we would have set it aside without terms, as we can give no recognition to the principle that one who obtains a deed under such circumstances as would make it fraudulent in law, can, by erecting improvements on the land conveyed, demand compensation therefor, as condition precedent to the grantor's right to have it declared void.

With the concurrence of the other judges, the judgment is reversed and cause remanded, to be disposed of in accordance with the views herein expressed.

REVERSED.