HOLLIWAY v. HOLLIWAY, *Appellant.*

1. **Equity**: CANCELLATION OF CONVEYANCE FOR FRAUD. Where the evidence showed that the parties to a conveyance of land were brothers, that the grantor was a cripple, diseased in body, and of weak mind, and under the control of the grantee by whom his fears of a breach of promise suit and loss of property were operated upon, for which there was no foundation in fact; that there was no consideration paid and none to be paid, and that the conveyance was induced by the fears of the grantor and the promise of the grantee to re-convey the land ; *Held*, sufficient to warrant a decree setting aside and cancelling the conveyance.

2. ————: PRACTICE, CIVIL: DISMISSAL OF ONE OF THE COUNTS IN A PETITION. Where the first count in a petition seeks the cancellation of a deed on the ground of fraud and undue influence, and the second count, a settlement of a partnership in personal property, the plaintiff may properly be allowed to dismiss the latter, since it states a separate cause of action.

*Appeal from Buchanan Circuit Court* —HON. JOS. P. GRUBB, Judge.

AFFIRMED.

*Vinton Pike* for appellant.

*Allen H. Vories* for respondent.

NORTON, J.—This is a proceeding in equity commenced

in the circuit court of Atchison county to set aside and
cancel a deed made by plaintiff to defendant, the petition
also containing a count setting up a partnership in certain
personal property and in farming operations, and praying
that an account be taken and the said partnership settled.
In the Buchanan circuit court, where the case was taken by
change of venue and tried, plaintiff dismissed as to the
second count in the petition, and the court rendered a
judgment setting aside and cancelling the deed, and from
this judgment defendant prosecuted his appeal to this
court, and asks a reversal of the same mainly upon the
ground that it is not sustained by the evidence.

The petition, in substance, charged that plaintiff and
defendant are brothers; that plaintiff has been, all of his
lifetime, sick, diseased, deformed and crippled, that his
mental faculties were weak, and that he at all times con-
fided in the defendant, trusting to and relying upon defend-
ant to control and direct him in all his business relations;
that for more than fifteen years he and defendant were
partners in business, and as such partners owned an undi-
vided half of the lands set out in said petition, upon which
said lands plaintiff and defendant lived, and cultivated
them as joint owners; that defendant managed and con-
trolled the property, and plaintiff, trusting in defendant's
superior judgment and business capacity and discretion, did
whatever defendant advised or directed; that about Octo-
ber, 1872, the defendant, intending to cheat and defraud
plaintiff out of his interest in said lands, and intending to
appropriate the same to his own use and benefit, repre-
sented to plaintiff that from his weak mind and physical
infirmities, he was incapable of properly owning or con-
trolling said lands, and then and there falsely and fraudu-
lently represented to plaintiff that one Sarah F. Crook,
(now Sarah F. Journey,) a woman who was then living on
part of the land of plaintiff and defendant, intended to
bring suit for breach of marriage promise against plaintiff,
by which he would be ruined, and his lands taken away

from him, and that if he would save his lands he must make a conveyance of them to defendant, to hold for him awhile, and then he would re-convey the same to plaintiff; that plaintiff, relying upon and confiding in his said brother' and in his representations aforesaid, and fully believing that defendant was advising him for the best in the premises, and having no will or judgment of his own, then and there conveyed by deed his interest in said lands to defendant, without any consideration therefor; that it was wholly untrue that the said Sarah F. Crook intended to prosecute any suit against plaintiff for breach of marriage promise, and it is wholly untrue that there had ever been any contract of marriage between said parties, or any foundation for any report thereof; that after said conveyance was made by plaintiff to defendant, he discovered the fraud which his brother had practiced upon him, and demanded of him a re-conveyance of said land, but that defendant has refused, and still refuses to make said reconveyance, and now denies that plaintiff has any interest in said lands. The plaintiff then prayed for judgment that said deed be set aside and cancelled, and that plaintiff be re-instated of his one-half title in said lands, and for all proper relief.

The defendant answered, denying each and every allegation in said petition.

The evidence offered on the trial clearly established that plaintiff owned at the time of the execution of the deed sought to be cancelled, an undivided interest in the land mentioned therein, which, according to the weight of the evidence, was an undivided half interest, and that the land at the time the deed in question was executed, was worth from $18 to $25 per acre, thus making the half interest of the plaintiff of the value of from $2,830 to $4,000, there being 320 acres in the entire tract. The evidence also clearly established the fact that plaintiff was a cripple, diseased in his hips, and had been so from birth, and it tended to show that he reposed the utmost confidence in

defendant, who was his brother, and that he was under his influence, control and direction; that his fears were operated upon by the story that designing persons were attempting to get his property, and that he was threatened with a suit for breach of marriage contract, for which, according to the evidence, there was no foundation in fact, and that the only safety for him was to convey the land to defendant.

Mr. Schooler, a witness for plaintiff, testified that plaintiff was crippled, deformed, and of weak mind, and Seth Holliway, a witness for defendant, and a brother of both parties, testified that it was understood in the family that plaintiff was not able to take care of himself, and would have to be taken care of, and that he would do whatever any of his brothers wanted him to do, and that he was easily influenced. Mac. Holliway, also a brother of the parties, testified that plaintiff had been a cripple all his life, had an impediment in his speech, and that defendant had control over him; that defendant told him that plaintiff had deeded the farm to him on account of apprehended difficulty with a woman who was threatening him with a claim for damages for breach of marriage contract; that witness told defendant that life was uncertain and that he ought to deed the land back or make it right with plaintiff, to which he replied he would make it all right as soon as the difficulty was over. Defendant did not pretend that he had paid anything for the land. Plaintiff, who was examined as a witness, testified that defendant kept after him to deed the farm over to him, on account of the woman threatening to get after him, and said he would deed it back to him when he asked him to do so; that there was no truth in the woman story; first demanded the deed back six months after he made it; that at the time he made the deed defendant gave him a note for $500, but that the note was for his interest in the personal property on the farm, that nothing was paid him for the land,

that the said note for $500 had never been paid, and he tendered it to defendant in open court.

Defendant in his evidence stated that he bought plaintiff's interest in the said land and personal property on the place for $500, and had given his note for that amount to plaintiff, which had not been paid, and that this constituted the consideration for the deed. There was other evidence relating chiefly to the personal property on the place, and as to what plaintiff's interest in it was, which it is unnecessary to notice, since the plaintiff dismissed the count in his petition having reference to it. Several witnesses expressed an opinion that plaintiff was competent to take care of himself, and had sufficient capacity to contract.

Under the rulings of this court in the cases of *Garvin v. Williams*, 44 Mo. 465; *Ranken v. Patton*, 65 Mo. 378; *Ford v. Hennessy*, 70 Mo. 580; *Cadwallader v. West*, 48 Mo. 483; *Bradshaw v. Yates*, 67 Mo. 221, the evidence above detailed fully warranted the court in rendering a decree cancelling and setting aside the deed in question. It shows that plaintiff trusted and confided in his brother, the defendant, and while the latter was vigorous in body and mind, the plaintiff was and always had been diseased in body and weak in mind, easily influenced, and was under the control of defendant; that the fears of plaintiff were operated upon by making him believe that he was in danger of losing his property from a cause which had no real foundation; that nothing whatever was paid or to be paid for the land, and that it was to be re-conveyed. As was said in the case of *Bradshaw v. Yates, supra*, " to give instruments executed under such circumstances countenance and support, would, in all cases where confidential relations exist, make the weaker party a victim to the rapacity of the stronger, and allow him to whom interests are confided for preservation and protection to appropriate them to his own use."

The court allowed plaintiff to dismiss the second count in his petition, and this action is complained of as being

1. EQUITY: cancellation of conveyance for fraud.

2. ——: practice,
c i v i l: dismissal
o f one of the
counts in the pe-
tition.
erroneous.  The second count of the petition sought a settlement of a partnership in personal property, while the first count sought to have a deed cancelled on the ground that it was obtained through fraud and undue influence.  The causes of action stated in the two counts, were separate and distinct, and we think plaintiff was, therefore, properly allowed to dismiss the second count.

We are of the opinion that the judgment is for the right party, and it is hereby affirmed.  All concur.