Dickman, C. J.
The finding of facts by the circuit court discloses, that the conveyance by Jesse Pride to George Andrew was not intended by him as a gift; that it was made without consideration to the g’rantor, and without any agreement entered into by the grantee to reconvey the property described in the deed; that the conveyance was made without any fraud or undue influence on the part of the grantee; and was made by the grantor with the intent and for the purpose of hindering, delaying and defeating the seizure or application of the property to the satisfaction of the claim then pending against him in the circuit court of Pleasants county, West Virginia.
Section 4196, of the Revised Statutes of Ohio, provides as follows: “Every gift, grant, or conveyance of lands, tenements, hereditaments, rents, goods or chattels, and every bond, judgment' or execution, made or obtained with intent to defraud creditors of their just and lawful debts or dam *414 ages, or to defraud or to deceive the person or persons purchasing such lands, tenements, hereditaments, rents, goods or chattels, shall be deemed utterly void and of no effect. ’ ’
While such a conveyance with intent to defraud creditors is, as ag'ainst creditors, thus made absolutely void, the principle is well settled that such a conveyance is good between the parties, and no remedy is afforded the fraudulent grantor or his ’heirs to reclaim the property. While the fraudulent grantee, from a sense of his moral duty, ought to give back the property to him from whom he received it, yet, the law, to discourage frauds, will not compel him to restore it to the fraudulent ' grantor. Swift v. Holdridge, 10 Ohio, 230. The doctrine has been adjudicated by a great weight of authorities, that neither party to a fraudulent conveyance can be aided in a court of- justice, but that they will be left in exactly that position in which they have placed themselves by their covinous and fraudulent transactions, and that the fraudulent grantor will not be permitted to impeach his deed, or to revoke or rescind such executed contract.
There are cases, however, seemingly at variance with this rule, in which aid was extended to grantors who were in delicto, but not in pari delicto with the grantees. But these cases are exceptions to the well-defined and almost universal rule, and rest upon facts not existing in the case before us. Where there are different degrees of guilt as between the parties to the fraudulent or illegal transaction, it was said in Roman v. Mali, 42 Md., 513, that as an exception to the g'eneral rule,, if one party act under circumstances of oppression, imposition, undue influence, or at great disadvantage *415 with the other party concerned, so that it appears that his guilt is subordinate to that of the defendant, the court in such case will relieve.
In Fletcher v. Fletcher, 2 McArthur (D. C.), 38, an action of slander had been commenced against the grantor and his wife, and the conveyance was executed to the defendant to protect the real estate therein described from the result of the action at law, upon an agreement with the defendant that as soon as the action was dismissed, or decided in favor of the grantor and his wife, he would reconvey the property to the grantor, his heirs or assigns. It was held that such an averment was fatal to the bill of complaint, and that a court of equity would not interpose to set the conveyance aside, but would leave the parties to the consequences of their own act. It was conceded, however, that a court of equity might assist the grantor where circumstances were shown to exist which recognized its interposition on other grounds of settled equity jurisdiction, “such as fraud in procuring the deed, imposition by the grantee, a violation of some fiduciary relation, an abuse of confidence, delusion or the like on the part of the grantor at the time of executing the deed.” See also Pinckston v. Brown, adm’r, 3 Jones’ Eq. (N. C.), 496; Boyd v. De La Montagnie, 73 N. Y., 498; Freelove v. Cole, 41 Barb., 318; Ford v. Harrington, 16 N. Y., 285; Holliway v. Holliway, 77 Mo., 396; Nichols v. McCarthy, 53 Conn., 299; Barnes v. Brown, 32 Mich., 146.
In commenting’ upon the foregoing and other cases of like tenor, Mr. Wait, in his work on Fraudulent Conveyances, § 401, very forcibly says : “While it is possible to deduce from them a general principle that degrees of guilt will be *416 recognized in such transactions, and that grantors may, in certain cases, reclaim the property fraudulently alienated, where the transaction was superinduced by the unfair action of a vendee who occupied some relation of confidence which enabled him to unduly influence the vendor, yet a very clear ease with well defined reasons for excepting it from the general rule must be presented. Debtors contemplating fraudulent alienations should draw little encouragement from these exceptional eases, for, as a general rule, after passing through the troubled waters of insolvency they will find themselves stripped of the power to reach or recover the secreted property in the hands of their fraudulent grantees. The ancient rule, in pa/ri delicto melior est conditio possidentis, is not to be easily uprooted, and must not be considered as overthrown or abrogated bjr these cases.”
It is contended that the deed from Pride to Andrew was not made with intent to defraud creditors, because, the result of the litigation in West Virginia showed that the claim against Pride was without any merit, and that consequently the claimants were not and never had been his creditors. The question therefore arises, whether a conveyance of property by the owner, during the pendency of an action, for the purpose of defeating a judgment that may be rendered therein against him, can be set aside at the instance of the grantor or his heirs after judgment has been rendered in his favor in the pending action, the conveyance having been made without the practice of any fraud or undue influence by the grantee, and without any promise by him to‘reconvey the property.
*417 One of the common incentives of a grantor to transfer his property in fraud of his creditors, is. the commencement of legal proceedings against him to subject his property to the payment of his debts. When such transfer is made of the grantor’s whole estate whilst a suit is pending against him, it becomes a badge of fraud calling for explanation and justification by proof. And when it is avowed, that the secret' intent and purpose of the conveyance was to hinder and defeat the seizure or application of the grantor’s property to the satisfaction of a judgment, if recovered against him, he confesses to a willingness and design to thwart the judgment of the court if contrary to his opinion and wishes. If the plaintiff; in the suit does not succeed, the grantor, on the ground that the plaintiff has turned out not to be a creditor, then invokes the aid of the very court, it may be, whose judgment he has endeavored to make valueless, to restore to him the property which he had deeded to another under a secret trust. If the plaintiff does succeed in his action, and thereby places himself on the footing of a creditor, he may then be forced to assume the burden of overthrowing the fraudulent conveyance made by the grantor.
Courts of law are the effective agencies by which creditors secure their rights, and it is to be presumed that their judgments and decrees will be founded on justice. If the grantor of property, therefore, not being certain whether his apprehensions as to the recovery of a judgment against him in a pending’ suit are well or ill-founded, acts as if the judgment would be against him, and by conveyance puts his property in the name of another under a secret trust, he cannot *418 complain if a court of equity leaves the parties in the position in which it finds them, and declines to set aside the conveyance.
The statute contemplates a grant or conveyance with intent to defraud creditors. It recognizes the moral quality of the act as residing in the intention. The finding of facts discloses, that the conveyance was made by Pride to Andrew with the intent, on the part of the grantor, to hinder, delay and defeat the application of the property to the satisfaction of the claim in litigation in West Virginia, in case judgment should afterward be recovered against him thereon. In other words, his design was,' that if a court of justice should find the claim against him to be good and valid, his conveyance would serve to render nugatory the judgment recovered in the suit by his creditors. The claimants, it is true, did not succeed in establishing their claim, but in view of the avowed intention of the grantor, in the event of the claimants’ success, a court of equity cannot so far regard with favor the conduct of the grantor, as to aid in putting him and the grantee back in the condition in which they were before entering into the transaction.
The fact that the suit resulted in favor of Pride can have but little bearing on the question of his fraudulent intent in conveying all his property to Andrew at the nominal consideration of two thousand dollars, but in reality without any consideration whatever. In many cases, such favorable résult might well have been brought about by the Conveyance itself, 'in causing the creditor to abandon his suit rather than enter upon the task of pursuing the property.
*419 If, before the suit in West Virginia had terminated, Pride had instituted proceedings to set aside his deed to Andrew, a court of equity would not, we think, have waited, to abide the result of the suit, but would have refused to cancel the deed, if convinced that it had been executed to defraud the claimants in the event of their recovering judgment.- It would have been enough to know, that the deed had been prompted by the fraudulent motive of placing the grantor’s prop-' erty beyond the reach of one then seeking to establish the validity of a claim against him in a court of justice, in case the claimant succeeded in his suit.
Our attention has been called to several cases in support of the contentions of the defendants in error. We need refer to only two of them.
Harris v. Harris' Ex'r, 23 Gratt., 737, as stated in the syllabus, was an action of debt brought by the' executor of Gabriel Harris against George Harris, to recover the amount of three bonds executed by George Harris to his father, Gabriel Harris. George tendered a special plea: That at the timé of the execution of the bonds he owed nothing to Gabriel, and that the consideration of the bonds was as follows: In 1866 four suits at law were pending’ against him in the county, naming the plaintiffs, to recover damages for trespass during the rebellion in impressing horses, etc., by him under orders of the Confederate government, hq" being an officer of the army under that government. He did not regard these claims as debts or. just liabilities on his part, but owing to the constitution of the courts and juries at that time, he feared they might be enforced against his property. He was informed by his counsel that the *420 result was uncertain. He conferred with his father, who advised him to secure his property against these claims. The plan adopted was for him to execute to his father the bonds sued on, antedated, with the distinct understanding that they were only to be used and treated as obligations to claim priority over the plaintiff in case of necessity, and if unnecessary, yvere to be handed back to the defendant. The bonds were executed under this understanding, and upon no other consideration. Wherefore Gabriel Harris and his executor were bound to redeliver the bonds to the defendant, because the suits hcod been dismissed in 1867, before the death of Gabriel, and the bonds were therefore null and void, and to be surrendered. On motion of the plaintiff the plea was rejected. The court held that the averment by the defendant of his fears that the courts and juries would not do him justice, could not avail him, as the court must presume that no injustice would be perpetrated in regular legal proceedings had in the forum where such proceedings were pending. * * . * it was held further, that the plea was not good on the ground that the facts stated would entitle him to relief in equity, because his ground of relief was his own fraud.
In Tantum v. Miller, 11 N. J., Eq., 551 (3 Stock. Ch.), the complainant, who was threatened with a prosecution for larceny, conveyed to her niece several tracts of land. Although entirely innocent of the charge, yet, being ignorant of the law and the effect of such prosecution, and being informed by persons with whom she was well acquainted and in whom she confided, that if such criminal prosecution was urged against her she might be deprived of her property, and that the same might *421 be taken from her by process of law, she was induced by such advice, and through the influence of her fears to make the convejmnce, her niece, the grantee, intending in due time to reconvey, the property to her. The chancellor said: “If this bill can be maintained, the court must take the broad ground, that if a person charged with a crime conveys away his property for' the avowed purpose of protecting it against the consequences of his conviction, if he escapes such conviction, a court of equity will aid him in recovering back his property. * * * The complainant made the conveyance for the unlawful purpose of placing it beyond the reach of the law, if the threatened prosecution should prove successful. * * * This was against public policy. This court cannot-aid a person under such circumstances.”
The two cases last cited go to sustain the position, that where an owner, in view of a possible judgment being rendered against- him, conveys his property with intent to defeat such judgment, he cannot, after judgment in his favor, recover back his property, even where the grantee has promised to reconvey.
In our opinion the judgment of the circuit court should be affirmed. ,

Judgment accordingly.