IN RE FERGUSON'S ESTATE; THE PLANET PROPERTY AND
FINANCIAL COMPANY, *Appellant.*

Division One, November 12, 1894.

1. **Mortgage:** NOTES: ORDER OF PAYMENT. Notes secured by mortgage should be paid in the order in which they mature, notwithstanding all are due when the sale is made.

2. **Conveyance:** RESULTING TRUST. A resulting trust will arise in favor of the parties not named in a conveyance in proportion to the amount of the consideration which they may have respectively contributed.

3. **Contract:** TRUST: SPECIFIC PERFORMANCE. J., as trustee of certain property, executed his deed of trust thereon to secure a note of $10,000 with interest. Subsequently, at the foreclosure sale, F., who held the principal note, on which $11,500 was due, purchased the property for $9,705. J. had paid $2,400 of interest, his beneficiary having paid none, and at the date of the sale he held part of the notes. Before the sale F. agreed to hold the title as security for $10,000 and interest from time of sale, and that when such sums were paid F. would convey the property to J. Indorsements showed six semiannual payments afterwards made. *Held,* that the assignee of J. was entitled to specific performance of such contract by F.'s administrator as against a creditor of F.'s estate.

4. ———: ———: ———. The doctrine that specific performance is in the sound discretion of the court, and that it requires a much less strength of case on the part of defendant to resist a bill than it does on plaintiff's part to maintain one, does not apply.

5. ———: ———: ———. Since F. could not foreclose the equity on the failure of J. to pay the principal within a reasonable time or to pay interest as it fell due, there was no want of mutuality in such contract.

6. ———: ———: ———: LACHES. Evidence considered and *held,* not to show such laches on the part of the plaintiff as barred him from specific performance.

*Appeal from St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

AFFIRMED.

*T. J. Rowe* and *J. M. Holmes* for appellant.

(1) Courts of equity will not decree specific performance when the decree would do injustice, and, generally, not in any case where it would be inequitable under all the circumstances. 2 Story's Eq., secs. 769 and 770; *Veth v. Gierth*, 92 Mo. 104. (2) When the purchaser has paid a substantial portion of the purchase money equity will treat him as the owner of the land, and, unless he has been guilty of gross laches, if the delay in the payment of the balance of the purchase money can be compensated in damages, will decree a performance of the contract. *Edgerton v. Peckham*, 11 Paige, 352. (3) On the other hand, if the purchaser has paid no portion, or but a small portion of the purchase money, the utmost diligence is required of him. The smallest unexplained delay will constitute laches, and will destroy his right to a specific performance. *Wells v. Smith*, 7 Paige, 22; *O'Fallon v. Kennedy*, 45 Mo. 124. (4) Again, the rule is well settled that a party seeking equitable relief must seek it with due diligence, and can not obtain it if he be guilty of laches, even though he bring his suit within the period fixed by the statute of limitations. *Bliss v. Prichard*, 67 Mo. 181; *Burgess v. Railroad*, 99 Mo. 496; *Glass v. Rowe*, 103 Mo. 513; *Kroenung v. Goehri*, 112 Mo. 641. (5) In *Klein v. Vogel*, 90 Mo. 247, a delay of three years was held fatal to the right of the plaintiff (a purchaser of an equity of redemption) to maintain a bill to set aside a deed of trust sale. (6) The rule as to laches is much more sharply drawn in the case of unilateral contracts—contracts by which one party only is bound. In such cases the rule is that the party agreeing to do anything is not bound at all, unless he has actually received the benefit of the consideration for which he

bargained. *Richardson v. Hardwick,* 106 U. S. 252; *Glass v. Rowe,* 103 Mo. 513.

*John D. Davis* for respondent.

(1) "Where, upon the purchase of property, the conveyance of the legal estate is taken in the name of one person, while the consideration is given or paid by another, the parties being strangers to each other, a resulting or presumptive trust immediately arises by virtue of the transaction, and the person named in the conveyance will be a trustee for the party from whom the consideration proceeds. A similar rule prevails in cases where the consideration proceeds from two or more jointly and the conveyance of the legal estate is taken in the name of one of them only." Hill on Trustees, page 92; *Baumgartner v. Guessfeld,* 38 Mo. 36. (2) Laches is defined as such neglect or omission to assert a right, as taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to an adverse party operates as a bar in a court of equity. 12 Am. & Eng. Encyclopedia of Law, 553; 2 Abb. Law Dict., 2; 2 Bouv. Law Dict., 40. (3) Mere lapse of time, short of the period fixed by the statute of limitations, will not bar a claim to equitable relief, where the right is clear, and there are no countervailing circumstances. *Kelly v. Hurt,* 61 Mo. 463; *Bradshaw v. Yates,* 67 Mo. 221; *Spurlock v. Sproule,* 72 Mo. 503. (4) Mere laches and acquiescence should be distinguished. *Archibald v. Scully,* 9 H. L. Cases, 360. (5) Lapse of time is permitted in equity to defeat an acknowledged right only on the ground of raising a presumption that the right has been abandoned—and this presumption will never prevail against opposing facts and circumstances outweighing it. *Nelson v. Carrington,* 4 Munf. 332; *Reardon v. Seary,* 1 Litt. 53; Pom-

eroy on Contracts, sec. 405, note 1, and cases cited; *Mastin v. Grimes*, 88 Mo. 478. (6) The law is well settled that an administrator may waive the general statute of limitations and may revive a debt against the estate of his testator, or intestate, even after it is barred by the general statute. Shouler on Executors, sec. 389; Woerner's Am. Law of Adm'n, sec. 401; *Wiggins v. Lovering*, 9 Mo. 262; *Stiles v. Smith*, 55 Mo. 363; *Carder v. Primm*, 47 Mo. App. 301. (7) The filing of plaintiff's bill for specific performance even though the contract had been unilateral, would at once bind him and make it mutual. *Coleman v. Upcot*, 5 Viner, 527; Fry on Spec. Perf. [3 Ed.], sec. 469.

MACFARLANE, J.—This proceeding was commenced in the probate court of the city of St. Louis, at the June term, 1891, against the estate of William F. Ferguson, deceased, upon the petition of Edward C. Dameron, as assignee, to enforce the specific performance of a contract for the conveyance of real estate by deceased to one William C. Jamison. For a full understanding of the questions of law involved the contract is given in full, and is as follows:

"Whereas, Jesse G. Lindell, by his last will and testament, dated January 18, 1858, and probated in the St. Louis probate court, February 9, 1858, and recorded in Book of Wills F, page 174, devised unto Jesse G. Lindell, Jr., a son of Peter Lindell, 1-36 undivided interest in all of his property of every nature and kind whatsoever, real, personal and mixed, subject to the life estate of Jemima Lindell, his widow;

"And, whereas, the said Jesse G. Lindell, Jr., conveyed all of his interest in said estate, as aforesaid, unto his mother, Ellen Davis, trustee;

"And, whereas, the said Ellen Davis, by her said trustee, by deed of trust, dated June 30, 1874, and

VOL. 124—37

recorded in recorder's office of the then county, now city of St. Louis, in Book 505, page 78, conveyed the said property to Charles Hoyle's trustee to secure the payment of the notes therein described;

"And, whereas, in pursuance to the said deed of trust, on account of the nonpayment of said notes, George W. Cline, trustee in said deed of trust, sold the said property at public auction on the twenty-third day of December, 1879, and at said sale William F. Ferguson purchased a portion of said property, and by deed dated December 23, 1879, acknowledged January 26, 1880, before Dorsey A. Jamison, the said George W. Cline, trustee in said deed of trust, conveyed unto said William F. Ferguson the said property purchased by him as aforesaid, and reference is here made to said deed for a more particular description of said property, and the said deed is here made a part hereof;

"And, whereas, a portion of said notes described in said deed of trust were owned by William C. Jamison and the note for ten thousand dollars was owned by said William F. Ferguson;

"Now, therefore, for and in consideration of the premises and for value received, it is hereby mutually covenanted and agreed by and between William F. Ferguson, party of the first part, and William C. Jamison, party of the second part, that said party of the first part will hold said property as security for the said ten thousand dollars and interest thereon, from and after January 1, 1880, at the rate of eight per cent. per annum, payable semiannually, and when the said ten thousand dollars shall be paid and the interest as aforesaid shall be paid, then the said party of the first part will convey to the said party of the second part the said real and personal estate, or to such person as the said party of the second part shall direct; that,

after the payment of said ten thousand dollars and interest as aforesaid, the said party of the second part shall be the owner and entitled to a conveyance of the said property conveyed to said party of the first part by said trustee, as aforesaid, that the said party of the second part will pay the said interest, as aforesaid, when it becomes due, as aforesaid.

"Witness our hands and seals on this twenty-third day of December, eighteen hundred and seventy-nine.

"WILLIAM F. FERGUSON, [SEAL]
"WILLIAM C. JAMISON. [SEAL]"

The indorsements on this contract showed that semiannual payments, of $400 each, were made by Jamison July 14, 1880; February 25, 1881; March 18, 1882; July 27, 1882; February 23, 1883, and on the twenty-fifth day of July, 1881, a small portion of the land was released in part payment of an installment of interest.

After a hearing, the probate court ordered the administrator to make, to the said Dameron, a deed to the property, in execution of the contract, and the appellant, who was a creditor of the said Ferguson, appealed to the circuit court. Upon a trial in that court, the following facts were developed:

By the will of Jesse G. Lindell, made in 1858, one thirty-sixth interest in his estate was devised to Jesse Lindell, subject to the life estate of the widow of the testator. On the twenty-seventh day of June, 1874, Jesse Lindell conveyed the property to William C. Jamison, as trustee for Ellen Davis. On June 30, 1874, Jamison, as trustee, conveyed the property to George W. Cline, as trustee, to secure a note for $10,000, dated on that day, and payable three years after date, and six semiannual interest notes for $500 each, the last one maturing thirty-six months after date. On the twenty-third day of December, 1879, the

land was sold by Cline, as trustee, under a power contained in the deed of trust, and Ferguson became the purchaser for $9,705, and a deed was made to him, and on the same day the contract in question was made between Jamison and Ferguson. Ferguson died in September, 1883, and his administrator is a party. On August 6, 1884, Jamison, being insolvent, by deed acknowledged and delivered, in consideration of $1,000, assigned said contract to Logan D. Dameron.

In February, 1886, the administrator of Ferguson undertook to sell the property for the payment of debts, but owing to notice by Dameron of his claims under the contract the sale was not perfected. About this time there were some efforts looking to a settlement between Dameron and the administrator, which were without results. In November, 1890, Dameron made a tender to the administrator of the amount due on the note, calculating it with simple interest. The tender was declined. On the eleventh of April, 1891, Logan D. Dameron assigned the contract to his son, E. C. Dameron.

On that day E. C. Dameron and the administrator óf Ferguson entered into a contract by which it was agreed that Dameron should present to the probate court his petition for an order authorizing the administrator to make him a deed under said contract, and, if an order was made, the said Dameron agreed to pay, within ten days thereafter, the amount due on the note at eight per cent. interest per annum from January 1, 1883. In consideration of this contract Dameron paid the administrator $1,000, which was in addition to the note. The administrator agreed to make a deed in pursuance of the order if obtained. In pursuance of this agreement these proceedings were commenced.

It appeared from the evidence that between the death of Ferguson in 1883, and the date of the tender

in 1890, the property had increased in value one hundred per cent. or more. Ferguson's estate is insolvent and appellant is a large creditor thereof. The trial in the circuit court resulted in an approval of the action of the probate court and an order in accordance therewith was made, and the said financial company appealed.

I. The original rights of the parties must be determined from the contract itself and in the light of the facts therein recited. The recitals, together with the will and deeds referred to, make up a very complete history of the various transactions which led to making the contract and show very clearly the circumstances under which it was made. The devisee of the property conveyed it to a trustee, for the use of his mother, Ellen Davis. The trustee was Wm. C. Jamison, one of the parties to the subsequent contract. Within six days after the execution of this deed, Jamison, as trustee, made a deed of trust on the property to secure a note for $10,000, and six interest notes for $500 each. The deed of trust was made for the benefit of Charles Hoyle, from which we may infer that the notes were made payable to him. The notes were dated June 30, 1874, but it does not appear what interest they bore after maturity. Default was made in the payment of the notes, and the property was sold December 23, two and a half years after maturity. There was then due on the principal note, if no interest had been paid, $11,500 calculating interest at six per cent. A portion of the notes were held by Jamison and it is not at all probable that Mrs. Davis paid any interest on the principal note.

The sale under a deed of trust, and the contract in question, are dated on the same day, and must have been a part of the same transaction. Ferguson then held the original note for the sum of $10,000. Jamison

held whatever balance was unpaid on the principal and interest notes. Under these facts the contract was made. Ferguson declares in the contract that he holds the title as security for the $10,000 and interest thereon from and after January 1, 1880, at eight per cent. payable *semiannually*.

I think there can be no doubt that this agreement was made prior to and in contemplation of the sale, and that the intention was that Ferguson should hold the legal title in trust, to be conveyed to Jamison, or his assigns, upon payment of the stipulated sum and interest. The deed of trust, under which the sale was made, secured what was due to Jamison, as well as the amount due to Ferguson, and the sale and purchase were evidently made for their mutual protection. Indeed the interest notes held by Jamison, first maturing, were entitled to precedence of payment, in the absence of stipulations to the contrary. The rule is that notes secured by mortgage should be paid in the order in which they mature, notwithstanding all are due when the sale is made. *Thompson v. Field*, 38 Mo. 325; *Mitchell v. Ladew*, 36 Mo. 526; *Hurck v. Erskine*, 45 Mo. 486.

Had the purchase been made by Ferguson, by agreement with Jamison, a resulting trust would have arisen in favor of Jamison in proportion to the amount his debt bore to that of Ferguson. As is said: "A resulting trust will arise in favor of the parties, not named in the conveyance, in proportion to the amount of the consideration, which they respectively may have contributed." Hill on Trustees [4 Am. Ed.], *92; *Baumgartner v. Guessfeld*, 38 Mo. 41, and cases cited.

The parties here did not depend upon a mere resulting trust, but, by their writing, declared an express trust and the terms of it are not left in doubt. The title was taken by Ferguson, to be held as security

for his debt.   All matters of precedence and the respective rights of the parties, under the original mortgage, were adjusted and settled.   The entire property was thereunder held to secure the single debt of $10,000.

II.   It is true as claimed that specific execution of a contract in equity is a matter; not of absolute right in the party, but of sound discretion in the court, and "it requires a much less strength of case on the part of a defendant to resist a bill to perform a contract, than it does on the part of the plaintiff to maintain a bill to enforce a specific performance."   *Veth v. Gierth*, 92 Mo. 104.

Without considering what the effect of this rule might have been had this been a mere contract for a sale of the land, we do not think the same principle applies to the right to enforce such a trust or equity, as is here declared.   "Courts of equity, from their inherent jurisdiction, assumed from the beginning the exclusive control over trustees in the discharge of their duties, whether affecting real or personal estate." Hill on Trustees [4 Am. Ed.], *42; 1 Story's Equity Jurisprudence [13 Ed.], p. 102, sec. 98.

This contract also, in its provision for the security of a debt, stands more in the nature of an equitable mortgage than that of a simple contract of sale.   The law provides no adequate remedy for a refusal to execute such a trust as this, as it does in case of a simple breach of contract of sale.   *Veth v. Gierth, supra*, 2 Story's Equity Jurisprudence [13 Ed.], p. 89, sec. 769.

The contract itself seems to be perfectly fair. Jamison had a substantial equity in the property prior to the trustee's sale.   He paid on the contract $2,400 in interest.   In any view in which it may be taken the case is clearly one for equitable cognizance, and does not rest on the mere discretion of the court.   Though

the contract is in the nature of a trust, yet Ferguson, the intestate, agreed to convey the property, upon full payment of the debt and interest, and we think it a contract for the conveyance of real estate, which the probate court had jurisdiction to hear and determine. Revised Statutes, 1889, sec. 172.

III. It is insisted that the contract is entirely unilateral and should not be enforced in equity for want of mutuality of obligation. We think there is no want of mutuality in the contract, even on the assumption that its absence would have prevented a court of equity from taking cognizance of the case. It was signed by both parties, and Ferguson agreed to convey when the specified debt and principal should be paid. While Jamison did not, in express terms, make himself liable for the principal debt, Ferguson had the undoubted right to forelose the equity, upon default in payment of interest installments when due, or of the principal, if not paid within a reasonable time after demand. Each party had an adequate remedy under the contract, and it was mutually binding upon each, and enforcible in equity. *Mastin v. Grimes*, 88 Mo. 484.

IV. It is further said that the delay of Jamison and his assignees in applying for relief, and the length of time they have been in default in payment of interest, are sufficient to bar the right of action. There is no doubt of the principle that "a court of equity will refuse relief where the party has slept upon his rights for an unreasonable length of time, and this, too, without regard to the statute of limitations." *Kroenung v. Goehri*, 112 Mo. 648. On the subject of laches no artificial rule has been, or can be, adopted. Each case must be determined upon its own circumstances. *Bliss v. Prichard*, 67 Mo. 186.

Taking the circumstances of this case, in connection with the contract, we can not say that the right to

enforce the contract should be denied on account of the delay in seeking its enforcement, or in the default in making the required payments. In the first place time is not made of the essence of the contract but, on the contrary, great latitude is given. The payments of interest were made with regularity until about the time of the death of Ferguson. While there is no proof of tender to the administrator prior to 1890, it is manifest that the rights of Ferguson's assignees under the contract were not recognized by him. An attempt was made in 1886 to sell the land for the payment of debts of the estate, and the sale was resisted by the assignee of the contract. The administrator made no effort to enforce the lien or collect interest so far as appears. The failure to pay the interest after Ferguson's death, may have resulted from doubt or uncertainty as to the proper person to whom payments should be made.

It should be kept in mind, also, that the life tenant was living all this time, and held possession of the property. None of the parties to the contract, their representatives or assigns were receiving any benefit from it. At what time they would have the possession and enjoyment depended upon the contingency of the life of the widow of Jesse G. Lindell. There was, therefore, no such necessity for pressing for a deed that might have been required had the right of possession depended upon holding the legal title.

It is true that between the death of Ferguson in 1883 and the filing of the petition for specific performance in 1891, there was a great increase in the value of the land, and that circumstance should have weight in determining the question of laches. "A purchaser can not be allowed to remain passive, prepared to affirm the transaction, if the concern should prosper, or to repudiate it, if that should prove to his advan-

tage." *Bliss v. Prichard, supra.* But this does not appear to be a contract of such a speculative nature as to require the application of that rule. It does not appear that there was any prospective increase in the value of the land when the contract was made. The increase in value came years after.

The delay in this case was much short of the statute of limitations, but we see nothing in the circumstances that would make it inequitable to grant the relief. The petitioner has at all times, asserted his rights, and a waiver or abandonment can not be implied. Judgment affirmed. All concur.