**Merlin Russell MICHAUD,
Plaintiff-Respondent,**

v.

**Ella RUCH, Defendant-Appellant.**

**No. 37120.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Dec. 28, 1976.

Raymond H. Vogel, Vogel & Frye, Cape Girardeau, for appellant.

Francis Toohey, Jr., Perryville, Buerkle, Buerkle & Lowes, David G. Beeson, Jackson, for respondent.

KELLY, Judge.

Ella Ruch, defendant-appellant, seeks to have this court reverse a decree of specific performance and judgment of the Circuit Court of Perry County whereby she was ordered to transfer title in certain described real estate situate in Perry County to the plaintiff-respondent pursuant to a contract for the sale of said real estate entered into between Mrs. Ruch and the plaintiff, Merlin Russell Michaud for a consideration of $38,000.00 on August 27, 1972. We affirm.

Plaintiff filed his petition for specific performance of a contract he alleged he entered into with the defendant on August 26, 1972, for the purchase of a 266 acre farm owned by the defendant for a consideration of $38,000.00. According to the terms of the contract $3,800.00 of the consideration was to be paid to defendant upon the signing of the contract and an additional $6,200.00 upon delivery of the deed to the farm. The balance of $28,000.00 was to be paid in equal annual installments over a 14 year period bearing interest at a rate of 6% per annum as evidenced by a promissory note in that amount secured by a first deed of trust on the farm. Defendant's Amended Answer admitted ownership of the land, denied the other allegations of plaintiff's petition, and alleged that on August 26, 1972 she was "weak of mind and incapable of managing and transacting ordinary business matters, was in a depressed state and mentally and emotionally overwrought, was subject to being influenced and coerced and over-reached and if said contract was signed by defendant, such signing was the result of such incapacity, mental and emotional state and of undue influence, coercion and overreaching." She further alleged that she did not understand that the contract would be enforceable.

With the issues thus framed by the pleadings the cause came on for trial.

Plaintiff's evidence was that after learning that defendant wished to sell her farm he contacted her and negotiated a sales contract. Over a period of several months he obtained financing for the agreed purchase price of $38,000.00, and then he, Harley Taylor and Janice Taylor, the wife of Harley Taylor, signed the contract for purchase of the farm from Mrs. Ruch. This contract had been prepared by defendant's lawyer. At the time they signed the contract the Taylors and plaintiff were going

to purchase the farm as partners, but in the interim plaintiff purchased the Taylors' interest in the sales contract and agreed that the Taylors would no longer be subject to any liability thereon. At the time the contract was signed, on August 26, 1972, plaintiff paid Mr. Brewer, defendant's attorney, $3,800.00 in the form of a certified or cashier's check, which defendant asked Mr. Brewer to keep and not cash. After plaintiff obtained an abstract of title he went to Mrs. Ruch and advised her that he was ready to close the sale, but she advised him that she did not think she would go through with it. Plaintiff consulted his attorney and a notice was sent to Mrs. Ruch that he was prepared to close the sale in the office of her attorney on December 13, 1972. When that date came to pass, plaintiff, Weldon Huber, the chief loan officer of the First National Bank of Perryville, Missouri, and plaintiff's counsel went to Mr. Brewer's office where plaintiff offered to either pay the entire balance due on the purchase price or, in the alternative, to deliver the balance of the purchase price according to the terms of the contract. Mr. Brewer refused to deliver a deed to the farm because defendant had not signed one and had informed him that she did not intend to complete the contract.

With respect to the defendant's competency to enter into the contract with the plaintiff, plaintiff offered the testimony of Mr. Brewer and defendant's granddaughter who testified that they considered the defendant fully capable of entering into the contract with the plaintiff in August, 1972. Defendant testified in the offices of a nursing home where she resided at time of trial, but her testimony was confusing. She had no recollection of the contract or whether she had signed it. She did not recognize Mr. Brewer and did not recall whether she ever wanted to sell the farm. She recalled running an ad in a newspaper—the Perry County Republican—advertising the farm for sale on December 1, 1971, when the advertisement was displayed to her. According to the record of the Perry County Memorial Hospital the defendant was hospitalized there on April 3, 1956 for hyperosto-

sis frontalis interna. Records of St. Mary's Hospital in St. Louis revealed that defendant was a patient in that Hospital between July 21, 1956, and August 19, 1956, when her condition was diagnosed as depressive reaction, antisocial reaction and chronic brain syndrome associated with cerebral arteriosclerosis. She was treated with psychotherapy and electric shock treatments and was discharged as improved. On April 12, 1964, she was admitted to St. Vincent's Hospital in St. Louis with an admission diagnosis of involutional depressive reaction following her husband's death the previous November. Although she wanted electric shock treatments they were not resorted to as part of her course of treatment and on April 16, 1964, she was discharged "on trial." On September 30, 1964, the defendant was discharged from St. Vincent's as improved.

Clarence Ruch and Francis Ruch, defendant's sons, also testified and expressed an opinion that she was not competent to execute the contract in August, 1972. On interrogation by the trial court both admitted that they thought $38,000.00 was probably a reasonable price for the farm, in August, 1972.

After the conclusion of the evidence the defendant made a request for findings in the following form:

"REQUEST FOR FINDINGS

Defendant requests the Court to draft an opinion and to include therein a statement of the grounds for its decision and its findings on the following:

1. Whether or not defendant was suffering from any mental or emotional disability at the time the contract was executed.

2. Whether or not defendant was subjected to pressure or coercion to sign the contract.

3. Whether defendant fully understood the legal consequences of signing the contract."

Thereafter, on April 10, 1975, the defendant filed proposed findings and judgment, but these were not accepted by the trial court,

and on the 16th day of April, 1975, the trial court entered its decree, including findings of fact and conclusions of law, directing the defendant to execute a deed to the farm, subject to the payment into the registry of the court the balance of the down payment of $6,200.00 and a note and deed of trust for $28,000.00, said note to bear interest at the rate of 6% per annum, payable semi-annually on July 10 and January 10, in an amount of $10,000.00 on January 10, 1976, $10,000.00 on January 10, 1977, and $8,000.00 on January 10, 1978. Mr. Brewer was further ordered to turn over the check for $3,800.00 to the defendant and to deduct the costs from the deposit of moneys made by plaintiff into the registry of the court and the balance thereof to the defendant upon demand. The trial court further ordered that upon compliance with the terms of the decree by plaintiff title in fee simple absolute should be deemed vested in plaintiff.

■ Defendant filed her notice of appeal to this court in due time. She initially contends that the trial court erred in refusing to make findings as she requested as to whether she was competent to contract when the sales contract was entered into with plaintiff, whether she was subjected to pressure or coercion to sign the contract, and whether she fully understood the legal consequences of signing the contract. This point is without merit because the trial court found that the defendant was fully in charge of her faculties at the time she executed the contract, was fully cognizant of her property and her relatives, was fully in charge of her faculties, and had the advice of competent counsel prior to executing the contract. We rule this point against the defendant.

Defendant's second point is that the trial court erred in finding that the only requirements for ordering specific performance are the mental competence of the parties, adequacy of consideration and that the vendee performed in accordance with the terms of the contract. She contends that this was error because the trial court had discretion to grant specific performance, which was not a matter of right; that the burden of proof was on the plaintiff to prove that a decree of specific performance was equitable under the evidence; that a less exacting standard of proof was required to induce the trial court to refuse specific performance than would have been required to reform the contract or to set it aside; and that the contract as written was inequitable because it provides for payment over a 14 year period to an 81 year old woman who was in need of funds for care in a nursing home.

■ Reduced to its most simple terms we conclude that what the defendant actually contends here is that the judgment of the trial court was against the weight of the evidence, or, in other words, was not supported by the evidence. Since *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976), appellate courts in reviewing judgments of court-tried cases shall sustain such judgments unless there is no substantial evidence to support them, unless the judgment is against the weight of the evidence, unless the judgment erroneously declares the law, or unless the judgment erroneously applies the law, and appellate courts are admonished to exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong.

■ Although there was some conflict in the evidence we find none of the infirmities enumerated in *Murphy v. Carron*, supra, as grounds for reversal of a decree or judgment in a court-tried case present here and we therefore rule this point against the defendant.

■ Defendant's third point, that the trial court erred in finding that the consideration for the contract was adequate, is likewise without merit. The thrust of defendant's argument in support of this point is that the basis for the trial court's finding of adequacy of the consideration for the purchase of the farm was based upon the testimony of defendant's two sons—Clarence and Francis Ruch—adduced by the trial court's interrogation of the witnesses. She argues that both of these witnesses

were called during defendant's case for the sole purpose of testifying with respect to their mother's mental and emotional condition and were not prepared to testify as to the value of the land. This novel contention that a witness in a civil case may be examined on only those matters for which he or she are offered by one of the parties is unsupported by any authorities. Furthermore, no objection to this line of questioning was voiced by defendant's counsel when it was elicited by the trial judge, no motion to strike was made, and therefore even if it was error (which we do not hold) it was not preserved for review in this court. Clarence Ruch had managed the farm for his mother over many years, possessed an intimate knowledge of its production, and it was his opinion that the price offered by the plaintiff to his mother for the purchase of the farm was reasonable. Mr. Huber, the bank appraiser, was likewise of the opinion that the purchase price was a reasonable one. We rule this point against the defendant.

Defendant's final point, that the trial court erred in ordering the defendant to accept a note and deed of trust from Mr. Michaud alone in payment, is supported by argument which is of little assistance to us in ascertaining the crux of her point. In one paragraph she argues that the trial court must have concluded that there was something inequitable in a contract providing for payments over a 14 year period which would exceed the life expectancy of the 81 year old vendor. She then, in the following paragraph, shifts the focal point of her attack on the requirement that defendant accept the promissory note and deed of trust of the plaintiff, "a person who testified that he had no finances and who was a ruffian convicted several times of assault." Ultimately, she argues, in her final paragraph, that even should the contract be specifically enforced, the contract itself provided for a note and deed of trust signed not only by the plaintiff, but also by the Taylors, who are not parties to the suit because they conveyed their interest in the contract to the plaintiff, and therefore refused to become liable on any note or deed of trust to the defendant.

To support this argument, defendant cites *Jones v. Dewitt*, 499 S.W.2d 524, 534[5] (Mo.1973), and 71 Am.Jur.2d, Specific Performance, § 211, p. 270, for the proposition that in rendering a decree of specific performance, the court has no power to decree performance in any other manner than according to the agreement of the parties and a court of equity cannot make a new contract for the parties or supply any material stipulation of the contract, but must enforce the contract according to its terms or not at all.

The "Real Estate Contract" of August 26, 1972, was between Ella Ruch as seller and Merlin Michaud and Harley J. Taylor and Janice Taylor, his wife, as the buyers for a purchase price of $38,000.00; $3,800.00 of the purchase price was to be paid by the buyers to the seller at the signing of the contract, $6,200.00 to be paid by the buyers to the seller on delivery of the deed and a promissory note for the balance of $28,000.00 secured by a first deed of trust on the property, payable in 14 years with equal annual installments. The makers of the note were to have the privilege of prepayment without penalty at any time and the deferred payments represented by the note and secured by the deed of trust was to bear interest at a rate of 6% per annum payable annually. The seller was to pay in full all taxes up to the time the general warranty deed was delivered, but taxes for the year 1972 were to be paid by the buyers. Time for performance of the contract was not to begin to run until the abstract was delivered to the buyers.

Thereafter, on November 13, 1972, plaintiff, by written agreement of that date, purchased from the Taylors for $4,000.00 all right, title and interest they had in the aforesaid "Real Estate Contract," and the plaintiff agreed to hold them harmless from any and all liability arising as a result of the contract aforesaid.

The general rule is that the assignee of a land contract vendee may maintain a suit in his own name to enforce

specific performance, if the vendee himself, but for the assignment, could have obtained such relief. *In re Ferguson's Estate*, 124 Mo. 574, 27 S.W. 513[1] (Mo.1894); Anno. Remedy of specific performance as available to vendee's assignee, 138 A.L.R. 205. The failure of the defendant to raise by motion or answer her contention that the Taylors are not parties to this proceeding constituted a waiver of this contention, *Skidmore v. Back*, 512 S.W.2d 223, 234[14] (Mo.App.1974), and we rule this point against the defendant.[1]

Judgment affirmed.

WEIER, P. J., and McMILLIAN, J., concur.

---

1. The defendant did not incorporate into her final point any challenge to the power of the trial court to modify the decree as entered by the trial court changing the terms of the contract with reference to the term over which the balance due—$28,000.00—was to be paid from 14 years to a 3 year period, other than to argue that this was some evidence that the trial court "thought there was something inequitable in a contract which provided that an 81 year old female resident of a nursing home be paid for

her land over a 14 year period, long past her life expectancy." We do not believe that conclusion is inevitable under the evidence and concur in the trial court's finding that under all of the evidence it was equitable to grant plaintiff specific performance and do not reach the question of the trial court's power to modify the decree in this respect. As to the broad powers inherent in a court of equity we refer interested persons to *Kerrick v. Schoenberg*, 328 S.W.2d 595, 599[2] (Mo.1959).